912 P.2d 602

**Evonne BJORNEN, Plaintiff–Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY; Herbert Chock & Associates, Inc.; Herbert Chock; and Doe Entities 1–10, Defendants–Appellees.**

**No. 17401.**

Intermediate Court of Appeals of Hawai'i.

March 5, 1996.

As Amended March 20, 1996.

William J. Rosdil and Phillip L. Carey (of counsel), on the brief, Hilo, for plaintiff-appellant.

Kale Feldman and John Kodachi (Kobayashi, Sugita & Goda, of counsel), on the brief, Honolulu, for defendants-appellees.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

BURNS, Chief Judge.

Plaintiff Evonne Bjornen (Bjornen) appeals the circuit court's August 16, 1993 Order Granting Defendants Herbert Chock & Associates, Inc., and Herbert Chock's Taxation of Costs Filed on June 1, 1993 (August 16, 1993 Order).[1] Bjornen contends that the circuit court was wrong when it characterized as taxable costs (A) the $3,168.22 paid for using WESTLAW, a computer legal research service operated by West Publishing Corporation, and (B) the $44.00 paid for using the facsimile (FAX) machine. We agree with Bjornen as to (A). We disagree with Bjornen as to (B). Bjornen also contends that the circuit court was wrong when it concluded that the $44.00 paid for using the FAX machine was reasonable. We disagree.

## I. BACKGROUND

This case arose out of a homeowner's insurance policy issued by defendant State Farm Fire and Casualty Company (State Farm) to Bjornen. A June 25, 1989 earthquake in Hilo, Hawai'i, damaged Bjornen's residence. Bjornen's contractor estimated that it would cost $148,028 to repair the damage. State Farm hired defendant Herbert Chock & Associates, Inc. (HCA) to provide an estimate. HCA estimated that it would cost $13,500 to repair the damage. Because HCA's estimate was less than the $17,927 deductible, State Farm denied Bjornen's claim. On August 9, 1990 Bjornen filed a complaint against State Farm, HCA, and defendant Herbert Chock (Chock) for damages under various and sundry theories.

Eventually, when State Farm agreed to pay Bjornen $100,000, State Farm and Bjornen settled and on February 27, 1992 State Farm was dismissed from the case.

On February 10, 1993 the circuit court entered an order "that Defendants [HCA] and [Chock's] Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment is granted in its entirety." The May 20, 1993 Judgment dismissed with prejudice all of Bjornen's counts and claims against HCA and Chock and stated that HCA and Chock were entitled to costs.

On June 1, 1993 the lawyers representing HCA and Chock filed a Notice of Taxation of Costs pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(d), requesting an order requiring Bjornen to reimburse them for the following costs:

| | |
|---|---:|
| Photocopies and Postage | $ 45.83 |
| Fax charges | 44.00 |
| WESTLAW research | 3,168.22 |
| Telephone [long distance] | 55.62 |
| Airfare | 200.00 |
| Car rental | 35.15 |
| Parking—Honolulu Airport | 3.50 |
| **TOTAL** | **$3,552.32** |

1. Bjornen also asks that we remand this case to the circuit court "with an indication that it should consider a motion from BJORNEN for [Hawai'i Rules of Civil Procedure (HRCP)] Rule 11 attorney's fees and costs against CHOCK for having to argue and appeal an issue that has already been decided by clear and logical precedent."

HRCP Rule 11 states in relevant part as follows:
The signature of an attorney or party constitutes a certificate by him that ... to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction,....

Hawai'i Rules of Appellate Procedure Rule 38 states as follows:
Frivolous appeals.
If a Hawaii [Hawai'i] Appellate court shall determine that an appeal decided by it was frivolous, it may award damages including reasonable attorneys' fees and costs to the appellee.

We do not know why Bjornen seeks relief under HRCP Rule 11 rather than HRAP Rule 38. Regardless, neither rule is implicated by the facts of this case. This court in *Tradewinds Hotel, Inc.*, 8 Haw.App. 256, 271 n. 12, 799 P.2d 60, 69 n. 12 (1990), concluded that the April 7, 1989 amendment to Hawai'i Revised Statutes § 607-9 abrogated nearly all the Hawai'i case law regarding costs. There has been no subsequent Hawai'i authority on point. Moreover, as our discussion of the WESTLAW cost issue in this case indicates, foreign precedent is not unanimous.

On June 3, 1993 Bjornen objected to the inclusion of the following items in the taxation of costs: the WESTLAW expense, the long distance telephone expense, and the FAX expense.

The August 16, 1993 Order awarded the entire $3,552.32 requested.

## II.  STANDARD OF REVIEW

■■■ The question whether a disbursement is a taxable cost is a question of law reviewed *de novo* under the right/wrong standard.  The award of a taxable cost is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion.  *DeMund v. Lum,* 5 Haw.App. 336, 690 P.2d 1316 (1984).  An abuse of discretion occurs when the trial court clearly exceeds the bounds of reason or disregards principles of law or practice to the substantial detriment of one of the litigants.  *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994).

## III.  DISCUSSION

Hawai'i Revised Statutes (HRS) § 607–9 (1993) governs the taxation of costs.  HRS § 607–9 was amended in 1989

> to make more explicit those disbursements which may be allowed in the taxation of costs incurred in a suit, action or other legal proceeding.  The bill also provide[d] that in determining whether and what cost should be taxed, the court may consider the equities of the situation.

Hse.Stand.Comm.Rep. 472, 15th Hawai'i Leg. (1989).  In *Tradewinds Hotel, Inc. v. Cochran,* 8 Haw.App. 256, 271 n. 12, 799 P.2d 60, 69 n. 12 (1990), we concluded that the amendment of HRS § 607–9 in 1989 abrogated nearly all prior case law regarding the taxation of costs.

HRS § 607–9 (1993) states as follows:

> *Cost charges exclusive; disbursements.* No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.  In determining whether and what costs should be taxed, the court may consider the equities of the situation.

We will separately analyze the costs challenged in this appeal.

### A.  Cost of Computer Legal Research

■■■ Taxable costs differ from attorney fees.  *Yokochi v. Yoshimoto,* 44 Haw. 297, 353 P.2d 820, *reh'g denied,* 44 Haw. 342, 353 P.2d 820 (1960).  The circuit court included as a part of taxable costs the $3,168.22 the lawyers for HCA and Chock paid for the use of WESTLAW for legal research in the case.  The question is, under HRS § 607–9 (1993), are the lawyers' disbursements for using WESTLAW expenses included within attorney fees or taxable costs?  We conclude that they are expenses included within attorney fees and are not taxable costs.

6 J. Moore, *Moore's Federal Practice,* ¶ 54.77[8] (2d ed. 1986) states that "[c]omputer research is generally treated as a lawyer's cost and not taxable as ordinary costs[.]" (Footnote omitted).  Similarly, 20 Am.Jur.2d *Costs* § 61 (1995) states that "[t]he expense of computer-aided research is also a component of attorney's fees, and like any other legal research such expense cannot be taxed as item of cost in addition to the attorney's fees award." (Footnote omitted).  These conclusions are confirmed by the Annotation on the *Recoverability of Cost of Computerized Legal Research Under 28 USCS § 1920 or Rule 54(d), Federal Rules of Civil Procedure,* 80 A.L.R.Fed. 168 (1986).

The majority of federal courts subscribe to the view that costs of computer legal research "are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs."  *In re San Juan Dupont Plaza Hotel Fire Litigation,*

142 F.R.D. 41, 47 (D.Puerto Rico 1992). *See Wolfe v. Wolfe,* 570 F.Supp. 826, 828 (D.S.C. 1983) (WESTLAW charges are incidental to attorneys' services and, therefore, are not considered to be valid costs); *Friedlander v. Nims,* 583 F.Supp. 1087, 1088–89 (N.D.Ga. 1984) (expenses of computerized legal research are properly considered a component of attorney fees and are not recoverable as costs).

In *Friedlander,* the court summarized why most federal courts consider disbursements for computer legal research a component of attorney fees:

> Although the line between attorney's fees and costs may be indeterminate, ... expenses for computerized legal research fall within the rubric of attorney's fees rather than that of costs. That use of a computer is "reasonable, if not essential, in contemporary legal practice" makes no difference: books, typing or word processing, office space, and even paralegal assistance are "reasonable, if not essential," and their costs are part of the total cost of an attorney's services. Nor does it matter that attorneys often bill their overhead for computer research as a separate item: many attorneys also bill typing and legal costs separately.

> \*    \*    \*    \*    \*    \*

> The substance of the work is legal research; the form of that research, whether with computer or microfilm or books, should not alter that fact, and litigants should not have the option of designating expenses of legal research as costs.

*Id.* at 1089.

Thus, the court in *Corsair Asset Management, Inc. v. Moskovitz,* 142 F.R.D. 347, 353 (N.D.Ga.1992) suggested that attorneys, in their applications for allowable attorney fees, "prove prevailing hourly rates charged by lawyers whose fees are inclusive of items traditionally thought to be a part of overhead."

Although the court in *Fressell v. AT & T Technologies, Inc.,* 103 F.R.D. 111, 115 (1984), held that LEXIS[2] charges were not taxable costs, it commented in relevant part as follows:

> Second, this court is not convinced that these statements are sound in comparing the use of a LEXIS terminal by a lawyer to the use of a word processing equipment by a legal secretary or in comparing the expense for time used in on-line computer research to the expense of maintaining a traditional library. The cost of the secretary's salary and the maintenance of the library are necessarily included in the attorney's hourly fee as a constant, static component of overhead, but as the charges for LEXIS time increase on a legal matter, the attorney's billable hours for that research should decrease. It is conceivable that the relationship of LEXIS time to attorney time is inverse rather than direct. A court ... might reasonably find that charges for LEXIS time should be recoverable as a substitute for attorney's fees.

> Third, such statements may unwittingly create an unfortunate set of incentives for attorneys. [It] may encourage attorneys to use traditional and inefficient research methods because the expense of computer research could never be recouped.

The minority of cases includes *Robinson v. Ariyoshi,* 703 F.Supp. 1412 (D.Haw.1989), *rev'd on other grounds,* 933 F.2d 781 (9th Cir.1991). In *Robinson,* the court stated in relevant part as follows:

> B. *Computer–Related Research Costs:*

> This court recognizes that various courts in various cases involving various facts have not agreed on the issue of whether computer-aided research can be recovered as "costs" by the prevailing party.

> This court agrees with the analysis set forth in *United Nuclear Corp. v. Cannon,* 564 F.Supp. 581 (D.R.I.1983):

> > Lexis is an essential tool of a modern efficient law office. As such, it saves lawyers' time by increasing the efficacy of legal research. Denial of reimbursement for Lexis charges in a proper case

2. LEXIS is a computerized legal research service. LEXIS is a registered trademark of Reed

Elsevier Properties Inc.

would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with Lexis. This, in turn, would lead inevitably to increased staffing of civil right[s] cases, and thus to larger fee awards. The Court will, therefore, treat Lexis charges as other cost items in the case.

and, with *Gorelangton v. City of Reno,* 638 F.Supp. 1426, 1432 (D.Nev.1986) that expenses normally billed to fee-paying clients should be allowable as taxable costs....

703 F.Supp. at 1436–37.

We disagree with the reason stated in *United Nuclear Corp., supra,* for treating disbursements for computer research as taxable costs. When an attorney is faced with a choice between using high-priced attorney time or incurring more economical computer legal research expenses, the fact that the computer legal research expenses are not taxable costs will rarely be the decisive factor. In most cases, it will not be a relevant factor.

We agree with the majority and conclude that disbursements for computerized legal research such as WESTLAW are a component of attorney fees and are not taxable costs.

### B. *Costs of FAX Transmissions*

■ HCA and Chock contend that reasonable disbursements for FAX transmissions are taxable costs. We agree. HRS § 607–9 includes within the definition of taxable costs "[a]ll actual disbursements, including but not limited to, ..., intrastate long distance telephone charges[.]" *A fortiori,* it includes the actual disbursement of interstate long distance telephone charges. We take judicial notice that FAX transmissions occur by way of intrastate and interstate telephone lines.

Bjornen contends that HCA and Chock failed their burden of showing that the FAX transmission expenses were reasonably incurred. We disagree. Their counsel's unchallenged representation to the circuit court that "the faxes were sent to Bjornen's counsel and State Farm's counsel in preparation of a conference call to settle the entire dispute," was sufficient.

### C. *Did the Circuit Court Abuse Its Discretion When It Awarded the Taxable Costs?*

In her Opening Brief, Bjornen states in relevant part as follows:

[P]ossibly because of the settlement with State Farm, the trial court granted [HCA's and Chock's] motion for judgment on the pleadings or summary judgment (without specifying which it was granting). [Bjornen] chose not to appeal. [The circuit court] should have considered the equities of the case, including whether or not [HCA's and Chock's] motion was providently granted, in deciding costs.

As noted above, the May 20, 1993 Judgment was in favor of HCA and Chock on the merits and stated that they are entitled to costs. Although Bjornen did not appeal, she now contends that the circuit court should have concluded that it erred when it entered the May 20, 1993 Judgment and, in the light of that conclusion, denied the award of any costs, or reduced them. Assuming the circuit court has the discretion to consider and reconsider such matters, we conclude that the circuit court did not abuse its discretion in this case.

### IV. CONCLUSION

With respect to the circuit court's August 16, 1993 Order Granting Defendants Herbert Chock & Associates, Inc., and Herbert Chock's Taxation of Costs Filed on June 1, 1993, we strike the part that awards $3,168.22 for the cost of using WESTLAW, and we affirm all other parts.