2000-NMSC-010

998 P.2d 575

**Jack KEY and Jack Key Motor Company Inc., Plaintiffs–Respondents,**

v.

**CHRYSLER MOTORS CORPORATION, Defendant–Petitioner.**

No. 25562.

Supreme Court of New Mexico.

March 10, 2000.

Reeves, Chavez, Greenfield & Walker, P.A., Barney James Reeves, William R. Anderson, Las Cruces, for Petitioner.

Norman Todd Law Office, Norman E. Todd, Las Cruces, for Respondents.

## OPINION

SERNA, Justice.

{1} Defendant–Petitioner Chrysler Motors Corporation (Chrysler) filed a cost bill resulting from litigation with Plaintiffs–Respondents Jack Key and Jack Key Motor Company, Inc. (Key) in the district court. Although the district court found that Chrysler incurred reasonable and necessary expenses, the district court significantly reduced the entire award and disallowed costs for computer-assisted legal research. Key appealed the order, and Chrysler cross-appealed to the Court of Appeals, which affirmed the district court's reduction of costs and disallowance of costs for computer-assisted legal research. This Court granted Chrysler's petition for writ of certiorari. Chrysler raises two issues: whether the district court abused its discretion by reducing Chrysler's allowable costs without evidence indicating Key's inability to pay, and whether Chrysler's computer-assisted legal research costs were reasonable and necessary and should have been awarded to it as the prevailing party. We conclude that the district court abused its discretion by reducing Chrysler's total costs and remand for a new evidentiary hearing on this issue consistent with this opinion, but we affirm the district court's decision regarding computer-assisted legal research.

## I. Facts and Background

{2} In 1989, Jack Key filed a complaint for violation of the Motor Vehicle Dealers Franchising Act, NMSA 1978, §§ 57–16–1 to –16 (1973, as amended through 1997) (Franchising Act), against Chrysler, alleging that Chrysler was in violation of the Franchising Act because of Chrysler's refusal to consent to Key's prospective purchase of a Chrysler dealership franchise. In 1990, Chrysler filed a motion for judgment on the pleadings, alleging that the complaint failed to state a claim upon which relief may be granted because Key lacked standing under the Franchising Act. The district court denied the motion and permitted Chrysler to seek an interlocutory appeal, which was denied by the Court of Appeals. In 1991, Key filed an amended complaint, adding Jack Key Motor Company, Inc., as a plaintiff and adding an allegation that Chrysler retaliated against the company because of Key's initial lawsuit. Chrysler again filed a motion for judgment on the pleadings or, alternatively, a motion for summary judgment, but the district court denied the motions.

{3} Following a bench trial, the district court entered judgment for Key in the amount of $300,000 plus $125,000 in attorney fees. The court found in favor of Chrysler regarding the retaliation claim. The judgment was appealed by both parties. This Court, which granted certiorari after the Court of Appeals affirmed the district court, reversed and found in favor of Chrysler and against Key on the standing issue. *Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 778, 918 P.2d 350, 364 (*Key I*).

{4} In 1996, Chrysler filed its cost bill in the district court. The court found that Chrysler incurred reasonable and necessary expenses in the amount of $237,852.60, rejecting costs for meals, computer-aided research, filing fees, and other expenses. The district court then reduced the total costs by 80%. The court articulated three reasons for reducing the award: first, it found Key unable to pay; second, it found a great disparity between the resources of Key and Chrysler; and third, it found that a large cost award in this case would cause a chilling effect on car dealers bringing a claim under the Franchising Act in the future. Key was thus required to pay Chrysler $47,570.52 in costs. Key appealed this order and judgment on the cost bill, and Chrysler filed a cross-appeal to the Court of Appeals. *Key v. Chrysler Motors Corp.*, 1999–NMCA–028, ¶ 1, 127 N.M. 38, 976 P.2d 523 (*Key II*).

{5} The Court of Appeals reversed the district court's order with regard to the allowance of costs for phone, facsimile, package courier, delivery, and photocopy charges. *Key II*, 1999–NMCA–028, ¶ 17, 127 N.M. 38, 976 P.2d 523. The Court of Appeals affirmed the remainder of the order, holding that the district court did not abuse its discretion in reducing Chrysler's costs or in refusing to allow Chrysler's charges for computer-assisted legal research. *Id.* ¶¶ 13, 19. Chrysler observes, and the Court of Appeals recognized, that although Key requested a hearing on his objection to the cost bill, Key did not present any evidence regarding the financial condition of the parties. *Id.* ¶ 3. The Court of Appeals specifically concluded that the district court did not abuse its discretion by declining to award the costs for computer-assisted legal research, and determined such costs to be similar to attorney fees, to which Chrysler was not entitled. *Id.* ¶ 19. In 1999, this Court granted Chrysler's petition for writ of certiorari regarding the appropriateness of the district court's reduction in Chrysler's costs and the denial of computer-assisted legal research costs.

## II. Reduction in Chrysler's Costs

■ {6} "In all civil actions or proceedings of any kind, the party prevailing shall recover his [or her] costs against the other party unless the court orders otherwise for good cause shown." NMSA 1978, § 39–3–30 (1966). Similarly, our rules provide that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs, but not attorneys' fees, shall be allowed as a matter of course to the prevailing party unless the court otherwise directs . . . ." Rule 1–054(D)(1) NMRA 2000. As the prevailing party, Chrysler is entitled to a presumption that it should be awarded costs. *See Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 94, 898 P.2d 709, 729 (1995) ("Rule [1–054] creates a presumption that the prevailing party will be awarded costs."); *Pioneer Sav. & Trust, F.A. v. Rue*, 109 N.M. 228, 231, 784 P.2d 415, 418 (1989) (noting that Rule 1–054 "allows costs to be awarded to the prevailing party as a matter of course"). Key must overcome this presumption by showing bad faith on Chrysler's part, miscon-

duct during the course of the litigation, that an award to Chrysler would be unjust, or that other circumstances justify the denial or reduction of costs. *Marchman*, 120 N.M. at 94, 898 P.2d at 729.

{7} "The trial court has discretion in assessing costs, and its ruling will not be disturbed on appeal unless it was an abuse of discretion." *Pioneer*, 109 N.M. at 231, 784 P.2d at 418; *accord Dunleavy v. Miller*, 116 N.M. 353, 362–63, 862 P.2d 1212, 1221–22 (1993). "While it is clear that the trial court is invested with wide discretion in determining whether to award costs, . . . such discretion is not unlimited." *Martinez v. Martinez*, 1997–NMCA–096, ¶ 20, 123 N.M. 816, 945 P.2d 1034.

■ {8} Chrysler's first argument is that the district court abused its discretion by reducing Chrysler's allowable costs by 80% based on unsupported findings that there was a disparity of wealth between the parties. The district court stated:

> However, I'm going to reduce the entire—whatever is left, I'm going to allow those costs but reduce that by 80 percent and allow 20 percent of that. The reason being, is there is clearly a gross disparity between the size [and] resources of the litigants.
>
> Given the resources of the plaintiff, it could be—allowing the full amount could possibly result in a bankruptcy of the party, and the court does have to take in consideration the ability of the parties to pay the costs.
>
> Additionally, the Court is concerned that allowing the full amount of costs to be taxed would not only have a chilling [e]ffect, but would close the courthouse door to automobile dealers under this particular statute.

The Court of Appeals concluded that "the district court properly exercised its discretion when it decided to partially reduce the cost award in this case because of the financial disparity between the parties, Key's perceived inability to pay all of Chrysler's costs, and the chilling effect that a large cost award would have on future litigation under the

Act." *Key II*, 1999–NMCA–028, ¶ 13, 127 N.M. 38, 976 P.2d 523.

{9} "If the trial court exercises its discretion not to award costs to the prevailing party it should articulate the reasons for its ruling, unless the basis for denying costs is readily apparent on the face of the record." *Marchman*, 120 N.M. at 94–95, 898 P.2d at 729–30 (quoted authority and internal quotation marks omitted). While the district court found that there was a gross disparity in the size and resources of the parties, that a chilling effect would result, and that Key was unable to pay, we conclude that there was no evidence supporting these findings in the record. *See Marshall v. Providence Wash. Ins. Co.*, 1997–NMCA–121, ¶ 35, 124 N.M. 381, 951 P.2d 76 ( "[T]he trial court did not find Defendants' conduct to be willful, unreasonable, or in bad faith. Moreover, the record does not clearly establish willfulness, bad faith, or other fault indicating the basis for the trial court's award of costs against Defendants and the reason for deviating from the general rule that the prevailing parties are entitled to an award of costs. Under these circumstances, we deem it necessary to remand for entry of specific findings of fact and conclusions of law detailing the basis for the court's award of costs.").

{10} In upholding the district court's reduction of Chrysler's costs, the Court of Appeals, *Key II*, 1999–NMCA–028, ¶ 10, 127 N.M. 38, 976 P.2d 523, relied on *Gallegos v. Southwest Community Health Services*, 117 N.M. 481, 489–91, 872 P.2d 899, 907–09 (Ct. App.1994). The Court of Appeals, in *Gallegos*, held that the district court may, in its discretion, deny or limit an award of costs to the prevailing party when the losing party lacks the resources to pay the cost award and the losing party acted in good faith and brought a claim that was not frivolous. *Id.* at 491, 872 P.2d at 909. In *Gallegos*, evidence given at trial indicated that the plaintiffs' income consisted of part-time work for approximately $5.00 per hour, demonstrating the plaintiffs' inability to pay $130,000 in costs to the defendants. *Id.* at 490, 872 P.2d at 908.

{11} Chrysler maintains, and following a review of the record we agree, that Key did not present any evidence to the district court regarding Key's ability to pay except to characterize Chrysler's trial counsel's testimony of the reasonableness and necessity of the items in its cost bill as valuing Key's dealership to be worth less than $200,000. Key states that "[t]estimony at the hearing showed that Defendant's expert valued Plaintiffs' dealership at $113,000 to $172,000." Chrysler persuasively contends, however, that this testimony involved the value of Key's claim of damages, not the value of Key's existing dealership.

{12} Chrysler's witness, George Finger, was one of two trial lawyers involved in the case between Chrysler and Key. The relevant portion of Finger's testimony is as follows:

Q. And isn't it true, Mr. Finger, that Chrysler's expert, Mr. Walter valued Jack Key's dealership at $275,000?

A. I think the value of the dealership, the net value, the net damage value that he projected was $172,000, that was after deducting the [$]300,000 that Mr. Key would have invested had he made the investment. And Mr. Kolbe included the [$]300,000 as part of the underlying investments.

Q. So, according to your expert, the net amount of damages to Mr. Key was $172,-000?

A. $172,000 under his alternative evaluation, assuming a consent was unreasonably withheld. Under Kolbe's calculation, with the corrections that he made it was [$]113,-000.

We agree with Judge Hartz's conclusion in *Key II* that this testimony "referred to an estimate of the value of the franchise that was the subject of this litigation—the franchise that Key had hoped to acquire but that Chrysler had denied him." *Key II*, 1999–NMCA–028, ¶ 25, 127 N.M. 38, 976 P.2d 523 (Hartz, C.J., concurring in part and dissenting in part).

{13} Chrysler accurately asserts that the Court of Appeals relied on Key's counsel's characterization of Key's business value as less than $200,000, which was in reference to the damage value of Key's claim, not the value of Key's dealership, for its conclusion

that Key was unable to pay Chrysler's costs. *See Key II,* 1999–NMCA–028, ¶ 11, 127 N.M. 38, 976 P.2d 523. The Court of Appeals stated that "the evidence of ability to pay was somewhat ambiguous," and that "[i]t is up to the trial court to draw appropriate inferences from the evidence." *Id.* Thus, both the Court of Appeals and the district court appear to have determined that Key was unable to pay Chrysler's full costs based on Key's incorrect characterization of Chrysler's evidence.

■ {14} Chrysler concedes that inability of a party to pay may be a factor considered by the trial court in assessing costs; however, Chrysler argues that Key did not offer any evidence regarding its financial condition, thus failing to satisfy its burden. Although concluding that the district court did not abuse its discretion, the Court of Appeals recognized that Key has the burden of demonstrating that Key lacks the resources to pay Chrysler's costs. *Key II,* 1999–NMCA–028, ¶ 11, 127 N.M. 38, 976 P.2d 523 ("To the extent that Key maintains the financial disparity of the parties required the denial of all costs, we simply point out that Key failed to present any proof that it could not pay the $42,000 in costs ultimately awarded by the court."). Key did not present any evidence regarding its ability to pay Chrysler's costs. Instead, Key simply inaccurately characterized Chrysler's witness's testimony as valuing Key's dealership as less than $200,000. Thus, we conclude that the district court abused its discretion in reducing Chrysler's costs based on Key's unsupported assertion that Key is unable to pay Chrysler's costs.

■ {15} We also observe that Key failed to present any evidence regarding the disparity in size and resources between the two parties or evidence regarding a chilling effect on future litigation under the Franchising Act. Further, as Judge Hartz concluded, "[t]he failure of Key to establish his inability to pay the cost award is critical, because otherwise the disparity in wealth between Chrysler and him is immaterial." *Key II,* 1999–NMCA–028, ¶ 26, 127 N.M. 38, 976 P.2d 523 (Hartz, C.J., concurring in part and dissenting in part). Without Key's mis-

construction of the testimony, there is no evidence from which the district court could infer that Key is unable to pay Chrysler's costs, and a perceived disparity in wealth between the parties is not, alone, dispositive. The Court of Appeals recently concluded that disparity of wealth between the parties, without additional evidence of the losing party's inability to pay or bad faith of the prevailing party, is not enough to justify a reduction in the cost award. *Cafeteria Operators, L.P. v. Coronado–Santa Fe Assocs.,* 1998–NMCA–005, ¶ 37, 124 N.M. 440, 952 P.2d 435 (upholding the trial court's decision that both parties bear their own costs because the trial court articulated several reasons unrelated to the wealth of the parties). The Court of Appeals, in *Cafeteria Operators,* stated, and this Court agrees, "that a party should not be denied an award of costs simply because it can 'afford to swallow' the expense." *Id.;* *accord, e.g., Smith v. Southeastern Pa. Transp. Auth.,* 47 F.3d 97, 99–100 (3d Cir. 1995) ("We reject the general proposition that it is 'inequitable' to tax costs in favor of a prevailing party with substantially greater wealth than the losing party.... If the losing party can afford to pay, the disparity in the parties' financial resources seems to us to be irrelevant for purposes of Rule 54(d)."). On remand, the court must consider the ability of Key to pay the cost bill, and not the disparity in the wealth of the parties.

■ {16} Chrysler also argues that Key did not present any evidence to support the notion that a large costs award could potentially cause a chilling effect; thus, the district court's findings are unsupported and speculative. The Court of Appeals rejected this argument, stating that Chrysler did not specifically argue to the trial court that it needed a factual record regarding a chilling effect and that the Court "question[s] whether the district court needed an evidentiary record to support its commonsense observation that extremely large cost awards may discourage car dealers from seeking relief under the Act." *Key II,* 1999–NMCA–028, ¶ 13, 127 N.M. 38, 976 P.2d 523. Again, as Chrysler notes, Key had the burden to overcome Chrysler's presumptive entitlement to costs. Further, as the Court of Appeals

recognizes, the Legislature could have, but did not, restrict cost awards against unsuccessful parties under the Franchising Act. *Key II*, 1999–NMCA–028, ¶ 12, 127 N.M. 38, 976 P.2d 523. *Compare* NMSA 1978, § 57–16–13 (1973) (allowing the district court, under the Franchising Act, to award costs and attorneys' fees to a successful plaintiff, but silent as to any limitation on a successful defendant's cost recovery), *with* NMSA 1978, § 47–9–7 (1991) ("If a court determines that any action alleging that an agricultural operation is a nuisance is frivolous, the court may award reasonable costs and attorneys' fees to the defendant."). Thus, we conclude that the Legislature did not intend to limit recovery of costs to prevailing defendants on the basis of a theoretical chilling effect. *See Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 256–57 (5th Cir.1997) (rejecting defendants' claim that an award of costs would cause a chilling effect on parents' contesting school district decisions, holding that because the federal statute at issue "does not prohibit an award of costs to a school district as a prevailing party in district court even when the parents have prevailed at the administrative level," the district court did not abuse its discretion in awarding costs to the school district). Especially considering the fact that Key failed to present any evidence regarding why the district court should deny Chrysler its costs, we conclude that the trial court abused its discretion by relying on an unsubstantiated assertion that the cost bill in this case would cause a chilling effect to future plaintiffs under the Franchising Act. *See, e.g., Cochran v. E.I. duPont de Nemours*, 933 F.2d 1533, 1540 (11th Cir.1991) (holding that the trial court did not abuse its discretion by awarding costs, and rejecting the losing party's chilling effect argument).

{17} We conclude that the district court abused its discretion by reducing the award of costs by 80%. The district court, as well as the majority of the Court of Appeals, appear to have accepted a critical misrepresentation of testimony and based their findings and conclusions upon that misrepresentation. Key failed to present any evidence or testimony regarding Key's inability to pay Chrysler's costs. Without the mistaken finding, the district court's decision is then

founded upon the perceived disparity of wealth between the parties and a theoretical chilling effect on future plaintiffs under the Financing Act. Key failed to present any evidence regarding these issues, thus failing to satisfy its burden. Neither assertion, without support in the record and without evidence regarding an inability to pay, justifies the reduction in Chrysler's costs. Because Key failed to present any evidence regarding its ability to pay Chrysler's costs, this Court is "unable to discern any apparent rationale" in the record for the 80% reduction in costs. *Wong v. Takeuchi*, 88 Hawai'i 46, 961 P.2d 611, 617 (1998) (remanding the issue of cost reduction to the trial court for recalculation). We therefore remand on this issue for further proceedings so that the district court may consider evidence and argument consistent with this opinion and articulate findings and conclusions supporting which and how much of Chrysler's costs are allowable.

### III. Computer–Assisted Legal Research

{18} Chrysler's second issue is whether its computer-assisted legal research was reasonable and necessary and whether it should be awarded costs for this expense as the prevailing party. Chrysler argues that this type of research is more cost effective and efficient, and it was thus complying with this Court's policy that parties should attempt to curb unreasonable and unnecessary expenses of litigation. Chrysler asserts that, because the issues in this case were complex and involved questions of first impression, this Court should conclude that this type of research is reasonable and necessary and, thus, a taxable cost of litigation.

{19} "The district court should exercise [its] discretion sparingly when considering expenses not specifically authorized by statute and precedent." *Dunleavy*, 116 N.M. at 363, 862 P.2d at 1222; *accord Smith v. Village of Ruidoso*, 1999–NMCA–151, ¶ 43, 128 N.M. 470, 994 P.2d 50 (reversing an award of costs for mediator's fees and noting consistency "with the Supreme Court's reluctance ... to expand the list of recoverable costs, and our admonitions to trial courts to carefully, cautiously, and sparingly exercise

their discretion when considering expenses not authorized by statute or precedent"); *Gillingham v. Reliable Chevrolet*, 1998–NMCA–143, ¶¶ 30, 32, 126 N.M. 30, 966 P.2d 197 (concluding that the district court did not adequately explain the reasoning behind the award of unusual costs and reversing and remanding for reconsideration). Although not an exclusive list, this Court has described costs as including fees for transcripts, depositions, photocopies, and expert witnesses, and stated that these costs have been "historically considered by our legislature and courts to be recoverable." *Dunleavy*, 116 N.M. at 363, 862 P.2d at 1222; *accord Pioneer*, 109 N.M. at 231, 784 P.2d at 418 (noting that costs within the trial court's discretion have included depositions, witness fees, transcript fees, special master fees, filing fees, and service of process fees). Chrysler argues that computer-assisted legal research is not similar to attorney time for conducting research but, instead, is more analogous to other taxable costs. Chrysler was awarded costs for, among other items, expert witness fees and depositions. We do not agree that computer-aided legal research is more similar to these costs than to an attorney's time performing legal research. "The substance of the work is legal research; the form of that research, whether with computer or microfilm or books, should not alter that fact, and litigants should not have the option of designating expenses of legal research as costs." *Friedlander v. Nims*, 583 F.Supp. 1087, 1089 (N.D.Ga.1984) (holding that computerized legal research expenses are properly considered a component of attorney's fees and are not recoverable as costs); *accord Bergmann v. Boyce*, 109 Nev. 670, 856 P.2d 560, 567 (1993) ("Attorneys incur computer research expenses as a function of their research of the law. Thus, this expense is more closely related to the attorney's fee than to the kinds of recoverable costs defined [by statute, such as witness fees and deposition costs].").

{20} Chrysler asserts that if computer-assisted legal research expenses are not recoverable as costs, attorneys will increase their hourly rates and decrease the use of a more economical method of performing research. We disagree. "When an attorney is faced with a choice between using high-priced attorney time or incurring more economical computer legal research expenses, the fact that the computer legal research expenses are not taxable costs will rarely be the decisive factor. In most cases, it will not be a relevant factor." *Bjornen v. State Farm Fire & Cas. Co.*, 81 Hawai'i 105, 912 P.2d 602, 606 (Ct.App.1996).

{21} The Court of Appeals noted that the majority of courts have declined to award charges for computer-assisted research as costs. *Key II*, 1999–NMCA–028, ¶ 19, 127 N.M. 38, 976 P.2d 523; *accord O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F.Supp. 728, 737 (E.D.Va.1998) ("The majority of federal courts subscribe to the view that costs of computer legal research are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs."), *aff'd*, 188 F.3d 502 (4th Cir.1999); *A.M.E., Inc. v. Azstar Cas. Co. (In re Liquidation of Azstar Cas. Co.)*, 189 Ariz. 27, 938 P.2d 76, 77–78 (Ct.App.1996) (concluding that computer legal research is to be included as attorney fees rather than costs), *approved by Ahwatukee Custom Estates Management Ass'n v. Bach*, 193 Ariz. 401, 973 P.2d 106, 108–09 (1999) (en banc); *Bjornen*, 912 P.2d at 606 (agreeing with the majority rule that expenses for computerized legal research are a component of attorney fees and are not taxable costs); *Bergmann*, 856 P.2d at 567 (concluding that computer-aided legal research expenses are a function of attorneys' research, related to attorney fees rather than costs); *Snyder v. Lovercheck*, 992 P.2d 1079, 1091 (Wyo.1999) ("We conclude that computer research expenditures are included within attorney's fees and are not taxable as costs."). We agree with the Court of Appeals on this issue and conclude that computer-assisted research is more analogous to attorney fees. "[U]nder the American Rule the prevailing party normally does not receive attorney fees;" thus, Chrysler is not entitled to recover legal research expenses. *Schroeder v. Memorial Med. Ctr.*, 1997–NMSC–046, ¶ 6, 123 N.M. 719, 945 P.2d 449. We conclude that the district court did not abuse its discretion by

denying Chrysler recovery of computer-aided research expenses as costs.

## IV. Conclusions

{22} Both the district court and the Court of Appeals apparently based their conclusions upon Key's misinterpretation of Chrysler's witness's testimony. Without support from this evidence, the district court improperly based the reduction in Chrysler's costs on a perceived disparity in the parties' relative wealth and a speculative potential chilling effect, rather than upon Key's ability to pay. Because Key failed to present any evidence to overcome the presumption that Chrysler was entitled to its costs, the district court abused its discretion in reducing Chrysler's costs. Thus, we reverse the district court on this issue. However, we affirm the district court with regard to the second issue. We conclude the district court did not abuse its discretion in determining that Chrysler is not entitled to costs for computer-assisted research. We remand to the district court for an evidentiary hearing and reconsideration consistent with this opinion.

{23} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI and MAES, JJ., concur.