The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 26, 2023

**No. A-1-CA-40113**

**TED JOSE GARCIA and CINDY GARCIA,**

      Plaintiffs-Appellants/Cross-Appellees,

v.

**NEW MEXICO DEPARTMENT OF
TRANSPORTATION,**

      Defendant-Appellee/Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Bryan Biedscheid, District Court Judge**

Keller & Keller, LLC
Michael G. Duran
Samantha L. Drum
Albuquerque, NM

Grayson Law Office, LLC
Brian G. Grayson
Albuquerque, NM

for Appellants

Park & Associates, L.L.C.
Alfred A. Park
Lawrence M. Marcus
Albuquerque, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     The direct appeal in this case involves a federal statutory evidentiary privilege created by 23 U.S.C. § 407 (hereinafter § 407).[1] The cross-appeal challenges the district court's denial of a bill of costs. Plaintiffs Ted Jose Garcia and Cindy Garcia appeal the district court's exclusion of the Final Project Prioritization Plan for the NM 599 Corridor (the Plan) pursuant to the privilege. Plaintiffs contend that Defendant New Mexico Department of Transportation (DOT) waived its right to assert the privilege. Alternatively, Plaintiffs contend that the district court improperly applied too broad an interpretation of the privilege. DOT cross-appeals the district court's subsequent bill of costs denial, arguing that the district court erred by failing to include in its order the required "good cause" for the denial. We affirm the district court's exclusion of the Plan, reverse the bill of costs denial, and remand with instructions that the district court file an amended order in which it specifies the reasons for its decision to deny costs for reconsideration.

**BACKGROUND**

{2}     This case arises from a vehicle collision on New Mexico Highway 599 (NM 599) in Santa Fe County, New Mexico that resulted in one death and severe injuries

---

[1]Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 784 (2021) (codified as amended at § 407). Because the provision was not substantively amended, this opinion cites the current designation.

to Plaintiffs. Decedent Arsenio Sanchez failed to yield at the intersection of NM 599 and Via Veteranos Road, colliding with Plaintiffs' vehicle as it was traveling south on NM 599. Plaintiffs sued DOT for personal injuries and loss of consortium, alleging that DOT's inadequate traffic controls and warnings caused the collision. DOT produced the Plan during discovery.

{3} The Plan was prepared for DOT in April 2010 as an aid in prioritizing construction improvements along NM 599. According to the Plan, "[i]mproved access to or across NM 599 is needed for . . . all modes of travel as the area continues to develop. There is public perception that improvements are needed to address safety concerns, particularly at existing at-grade intersections." The Plan provides detailed evaluations of alternative construction projects along NM 599, with the purpose of prioritizing "public funding that addresses the access issues and supports economic development, regional transportation and long range planning goals." The Plan prioritizes projects "based on their ability to satisfy the purpose and need, public input, and cost." In addition to the original purpose and need, the Plan considers multiple factors, including safety, as the basis for the need of transportation improvement. The Plan recommends constructing an interchange at the intersection where the accident took place. The Plan observes that this recommendation "would improve the safety at the intersection of C[ounty] R[oad] 70 (Via Veteranos) and NM 599."

{4} Plaintiffs sought to introduce the Plan during trial to demonstrate that DOT was aware of the intersection's dangerous conditions for over five years. DOT responded by filing a motion in limine to exclude admission of the Plan pursuant to § 407. After a hearing on the motion, the district court ruled in favor of DOT and ordered Plaintiffs not to introduce the Plan into evidence or allude to the Plan during trial. A three-day jury trial ensued, and the jury rendered its verdict in favor of DOT. Following entry of the verdict, DOT filed a bill of costs requesting $23,058.84 pursuant to Rule 1-054(D) NMRA. The district court denied the request.

{5} Plaintiffs appeal the exclusion of the Plan, and DOT cross-appeals the denial of their bill of costs.

**DISCUSSION**

**I.    The District Court Did Not Err in Excluding the Plan**

{6} We generally "review discovery orders and initial determinations regarding the applicability of privileges for an abuse of discretion." *Albuquerque J. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 2019-NMCA-012, ¶ 15, 436 P.3d 1. The district court's construction of a privilege, however, is reviewed de novo. *Id.* In reviewing the application of a federal privilege, our duty is to give effect to the intent of Congress; we may find guidance to do so in federal case law interpreting the privilege. *See State v. Branham*, 2004-NMCA-131, ¶ 11, 136 N.M. 579, 102 P.3d 646 ("Our duty, when interpreting federal statutes, is to give effect to the intent of

3

the legislative body. In this instance, we endeavor to give effect to the intent of Congress. When doing so, we may find guidance in federal case law interpreting federal statutes." (citations omitted)).

{7}     We first address Plaintiffs' arguments that DOT waived the privilege by producing the Plan during the discovery process and by not producing a privilege log. Plaintiffs argue that DOT produced the Plan "without any claim that the document was privileged . . . fail[ing] to preserve any claim to privilege," and thus "the . . . Plan should have been admissible at trial." DOT responds that the Plan was "available to the public, so no harm was done in producing it in discovery." We agree with DOT because § 407 provides that protected documents "shall not be subject to discovery *or* admitted into evidence" (emphasis added), indicating the privilege is not lost solely because the evidence has been produced in discovery. In addition, § 407 does not impose a confidentiality component for the privilege to apply. *Compare* § 407, *and Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 180, 183 (3d Cir. 2013) (holding that a report was privileged under § 407 even though it was publicly available through the National Crossing Inventory, a database of highway-railroad crossing in the United States), *with* Rule 11-511 NMRA ("A person who possesses a privilege against disclosure of a confidential matter or communication waives the privilege if the person voluntarily discloses or consents to disclosure of any significant part of the matter or communication.").

4

**{8}** Furthermore, DOT need not produce a privilege log to assert the § 407 privilege. *See Albuquerque J.*, 2019-NMCA-012, ¶ 21 (explaining that a party asserting a privilege may provide support therefor "through a variety of mechanisms, including submission of a privilege log or an affidavit, in camera interview, or other means as required by the circumstances of a particular case" (internal quotation marks and citation omitted)). One purpose of producing a privilege log is to provide the district court sufficient details to make an independent judicial determination regarding the applicability of the privilege. *See Pina v. Espinoza*, 2001-NMCA-055, ¶ 24, 130 N.M. 661, 29 P.3d 1062 (asserting that failure to prepare a sufficiently detailed privilege log thwarts meaningful independent judicial review). The Plan's availability allowed the district court to determine whether § 407 applied based on the Plan itself, obviating the need for a privilege log describing the Plan's content. *See Albuquerque J.*, 2019-NMCA-012, ¶ 21 (noting that the circumstances of a particular case may determine the means through which a party supports its assertion of privilege). Accordingly, DOT did not waive its assertion of the § 407 privilege by producing the Plan during discovery or by failing to produce a privilege log.

**{9}** Next, we turn to whether the district court erred in its application of § 407, which provides that

> [n]otwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway

crossings, pursuant to [§§] 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing [f]ederal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

In *Pierce County, Washington v. Guillen*, 537 U.S. 129, 133-36 (2003), the United States Supreme Court explored the background and purpose of § 407, though it did not apply the relevant part of the privilege. The Court explained that, beginning in the late 1960s, "Congress . . . endeavored to improve the safety of our Nation's highways by encouraging closer federal and state cooperation with respect to road improvement projects." *Pierce*, 537 U.S. at 133. Thus, Congress established several federal programs to assist the states in identifying and evaluating roads and highways in need of safety improvements and to provide funding for those projects. *Id.* (citing §§ 130 (Railway-Highway Crossings), 144 (National Bridge and Tunnel Inventory and Inspection Standards), and 148[2] (Highway Safety Improvement Program)).

{10}    The Court explained that one of those programs, the Highway Safety Improvement Program, required any state that wanted federal funds for safety improvement projects to "undertake a thorough evaluation of its public roads."

_____

[2]When *Pierce* was decided, § 407 contained internal references to §§ 130, 144, and 152. *See Pierce*, 537 U.S. at 135-36 (construing a former version of § 407). § 152 was later amended and is now codified at § 148. § 407 reflects this change and references the amended statute. We refer to the current § 148 in our analysis.

6

*Pierce*, 537 U.S. at 133. Shortly after the program was adopted, the states objected to the lack of confidentiality regarding their compliance measures because they "feared that diligent efforts to identify roads eligible for aid under the [p]rogram would increase the risk of liability for accidents that took place at hazardous locations before improvements could be made." *Id.* at 134. Thus, the United States Department of Transportation recommended the adoption of legislation preventing the disclosure of information compiled in connection with the program. *Id.*

{11} Congress responded by enacting § 407. *Pierce*, 537 U.S. at 134. The statutory language is expansive, precluding the admission of specified documents into evidence "in [f]ederal or [s]tate court or considered for other purposes in any action for damages." *Id.* The statutory privilege "clearly has two parts." *Zimmerman*, 706 F.3d at 181. The first part encompasses "reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to [§§] 130, 144, and 148." § 407; *see Zimmerman*, 706 F.3d at 180-81. The second part of the statute includes documents that an agency compiles or collects "for the purpose of developing any highway safety construction improvement project which may be implemented utilizing [f]ederal-aid highway funds." § 407; *Zimmerman*, 706 F.3d at 181, 184 (internal

quotation marks and citation omitted). This case involves the second part of the statute.[3]

{12}   Following the Supreme Court's example, the Third Circuit Court adopted a narrow interpretation of the second part of § 407. *Zimmerman*, 706 F.3d at 184. In *Zimmerman*, the Third Circuit Court was tasked with determining whether § 407 privileged railroad crossing reports obtained from the Department of Transportation's National Crossing Inventory. *Zimmerman*, 706 F.3d at 180, 184. In its analysis, the court explained that "[t]here are two plausible interpretations of the relevant language in § 40[7]." *Zimmerman*, 706 F.3d at 184. The broad interpretation privileges all "reports, surveys, schedules, lists, or data" that are collected for the purpose of developing highway safety construction "with the understanding that someone might use [them] to improve highway safety in a later construction

---

[3]Plaintiffs dedicate a section in their brief in chief to the argument that the first part of the statute does not privilege the Plan. Plaintiffs' argument, however, is misguided for multiple reasons. First, the district court did not rely on the first part of the statute to determine that the Plan was privileged. Second, Plaintiffs rely on an outdated version of the statute that references to § 152, instead of the current version which references §§ 130, 144, and 148. Finally, DOT did not argue to the district court or on appeal that the first part of § 407 privileges the Plan. Accordingly, this Court requested supplemental briefing regarding the interpretation of the second part of § 407, relies on the second part of § 407 for its decision, and declines to further address the first part of § 407. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.").

project." *Id.* at 180, 184 (internal quotation marks and citation omitted). "The narrow interpretation is that a report was collected for the statutory purpose if the agency collected it with the intent to use it for a particular construction project." *Id.* at 184.

{13}     The Third Circuit Court adopted the narrow interpretation for two reasons. First, the recognized principle that "statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth." *Id.* (internal quotation marks and citation omitted); *see Pierce*, 537 U.S. at 144 (adopting a narrow interpretation of the first part of § 407). Second, the court expressed that "the narrow interpretation is more faithful to the text." *Zimmerman*, 706 F.3d at 184. The Third Circuit Court explained that the broad interpretation would render much of § 407 language unnecessary because "if the second part privileges any document that might be used to improve highway safety in a later construction project, there would be no need for the first part to privilege documents." *Zimmerman*, 706 F.3d at 184. Therefore, the broad interpretation would privilege all information that might be used to improve safety in a later project, including information which is "compiled or collected . . . pursuant to [§§] 130, 144, and 148," rendering the first part of the statute superfluous. *See* § 407. Moreover, the court highlighted the difference between the verbs used in the first and second parts of § 407, "'identifying, evaluating, or planning' in the first and 'developing' in the second." *Zimmerman*, 706 F.3d at 185. According to the court, "[t]he first part

9

seems to privilege documents that deal with both potential and actual projects, while the second part appears to privilege only those documents that deal with actual projects." *Id.*

{14} We are persuaded by the reasoning of the Third Circuit Court and adopt the narrow interpretation. The second part of § 407 only privileges documents prepared "when the agency already has a construction project in mind—and not simply documents that might be used to plan later projects." *Zimmerman*, 706 F.3d at 185. Therefore, to determine whether the Plan is privileged under the second part of § 407, we must consider whether the Plan was prepared with the intention to be used in a particular highway safety construction improvement project "which may be implemented utilizing [f]ederal [] aid highway funds." § 407. We conclude that the Plan meets the requirements to be protected under the second part of § 407.

{15} Plaintiffs present two arguments against privileging the Plan under the second part of § 407. First, Plaintiffs contend that "there is no indication that the Plan and the information contained therein was for a particular project." Second, Plaintiffs argue that the Plan does not contemplate a safety construction project because its stated purpose is to prioritize projects along NM 599 and "addressing the safety concerns is a secondary need for the project."[4] We address each argument in turn.

_____

[4]Plaintiffs do not dispute that federal aid highway funds were used; a DOT engineer stated that additional improvement to NM 599, as recommended in the Plan, utilized federal aid highway funds.

{16} DOT responds to Plaintiffs' first argument by explaining that "the Plan was used to prioritize improvements along [NM] 599, which constitutes a particular project and not an abstract theoretical possibility." We agree. The Plan was prepared for a particular project because it reevaluated and prioritized improvements to NM 599 that DOT had already planned and it resulted in the completion of a specific construction project. In contrast, the *Zimmerman* court held that the privilege did not apply to a report that collected data on railroad crossings because the agency did not collect the report "for a particular project—instead, they were collected to establish a national database that might be used in future projects." *Zimmerman*, 706 F.3d at 185. Similarly, *Zimmerman* held that the second part of § 407 did not privilege accident reports because they are "collected for a variety of reasons" but "[i]n most cases, . . . accident reports are not collected for a particular highway [] safety construction project." *Zimmerman*, 706 F.3d at 186.

{17} In this case, the Plan contains specific information regarding NM 599 safety improvement alternatives, including traffic analysis, and estimated construction cost. The level of detail of the information contained in the Plan indicates that DOT intended to construct the improvement projects along NM 599; the Plan simply reevaluated and prioritized the options. The Plan asserts, "[i]mprovements to the NM 599 intersections that were planned but not constructed are being reevaluated." The Plan did not gather general data that might theoretically be used in future projects.

Rather, the Plan contains the type of specialized analysis that is collected for a particular project that the agency had already planned. Further, DOT presented the affidavit of a DOT engineer highlighting that an interchange on NM 599 was constructed based on the Plan. *See Zimmerman*, 706 F.3d at 185 ("[T]he second part [of § 407] privileges documents prepared when the agency already has a construction project in mind.").

{18} We are unpersuaded by Plaintiffs' argument that "[t]he Plan is not a particular project" because it "discusses a wide array of potential and alternative projects." The mere fact that the Plan includes analysis pertaining to multiple projects does not categorically preempt the application of § 407. As explained above, the purpose of the plan was to prioritize among alternatives to improve NM 599. Prioritizing alternatives inherently entails the collection of multiple projects' detailed information to compare alternatives. Prioritization can be a crucial step in the planning and development of highway construction improvement. Privileging the Plan, which contains highway improvement details, gives effect to the intent of Congress to prevent Plaintiffs from receiving an "effort-free tool in litigation" that may discourage DOT from its "diligent efforts to collect the relevant information necessary, more candid discussions of hazardous locations, better informed decision[-]making, and, ultimately, greater safety on our [n]ation's roads." *Pierce*, 537 U.S. at 146-47.

12

{19} Plaintiffs' second substantive argument is that this Court cannot "base its decision solely on the degree to which safety was considered in the Plan" because doing so would indirectly "adopt the broad interpretation of § 407 rejected in *Zimmerman*." As discussed above, the narrow interpretation articulated in *Zimmerman* does not address the degree to which safety must be considered when applying the second part of § 407. Rather, the narrow interpretation clarifies that DOT must collect the privileged document in relation to a planned highway safety construction project. *See Zimmerman*, 706 F.3d at 184. In this case, the Plan lists safety as one of the factors that can be the basis for the need of a transportation improvement. Therefore, completed projects based on the Plan are highway safety construction projects.

## II. The District Court Erred in Failing to Provide Grounds for Denying DOT's Bill of Costs

{20} "We review the district court's decisions regarding costs for an abuse of discretion." *Aquifer Sci., LLC v. Verhines*, ¶ 66, 2023-NMCA-020, 527 P.3d 667, *cert. denied* (S-1-SC-39734, Jan. 30, 2023). DOT contends that the district court erred by not establishing good cause for the denial of the award. We agree.

{21} "In all civil actions or proceedings of any kind, the party prevailing shall recover his costs against the other party unless the court orders otherwise for good cause shown." NMSA 1978, § 39-3-30 (1966). Similarly, our rules state "[u]nless expressly stated either in a statute or in these rules, costs . . . shall be allowed to the

13

prevailing party unless the court otherwise directs." Rule 1-054(D)(1). As the prevailing party, DOT is "entitled to a presumption that it should be awarded costs." *Key v. Chrysler Motors Co.*, 2000-NMSC-010, ¶ 6, 128 N.M. 739, 998 P.2d 575. "The burden is on the losing party to demonstrate that an award of costs would be unjust or that other circumstances justify a denial or reductions of costs." *OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 48, 514 P.3d 40. "The most common bases for denying costs to prevailing defendants have been the indigency of the losing plaintiff, coupled with good faith of the indigent and the non-frivolous nature of the case." *Gallegos ex rel. Gallegos v. Sw. Cmty. Health Servs.*, 1994-NMCA-037, ¶ 29, 117 N.M. 481, 872 P.2d 899 (text only) (citation omitted).

{22}    If the district court "in the exercise of its discretion does not award costs to the prevailing party, it should specify the reasons for its denial unless the basis for denying costs is clear from the record." *Martinez v. Martinez*, 1997-NMCA-096, ¶ 20, 123 N.M. 816, 945 P.2d 1034. In this case, however, the district court did not explain the basis for its decision to deny costs. The district court, thus, abused its discretion. *See* § 39-3-30; *see also* Rule 1-054(D)(1). We reverse and remand with instructions that the district court file an amended order in which it specifies the reasons for its decision to deny costs.

**CONCLUSION**

{23}    For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

{24}    **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation.**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JACQUELINE R. MEDINA, Judge**

15