208 P.3d 713

COUNTY OF HAWAI'I, a municipal corporation, Plaintiff/Counterclaim Defendant–Appellee

v.

C & J COUPE FAMILY LIMITED PARTNERSHIP, Defendant/Counterclaimant–Appellant

and

Robert Nigel Richards, Trustee Under the Marilyn Sue Wilson Trust; Miles Hugh Wilson; John Does 1–100; Jane Does 1–100; Doe Partnerships 1–100; Doe Corporations 1–100; Doe Entities 1–100; and Doe Governmental Units 1–100, Defendants.

C & J Coupe Family Limited Partnership, Third–Party Plaintiff–Appellant

v.

1250 Oceanside Partners aka Hokuli'a, Third–Party Defendant–Appellee (Civ. No. 00–1–0181K).

County of Hawai'i, a municipal corporation, Plaintiff/Counterclaim Defendant–Appellee

v.

C & J Coupe Family Limited Partnership, Defendant/Counterclaimant/Cross Claimant–Appellant

and

1250 Oceanside Partners aka Hokuli'a, Defendant/Cross Claim Defendant–Appellee

and

Robert Nigel Richards, Trustee Under the Marilyn Sue Wilson Trust; Miles Hugh Wilson; John Does 1–100; Jane Does 1–100; Doe Partnerships 1–100; Doe Corporations 1–100; Doe Entities 1–100; and Doe Governmental Units 1–100, Defendants (Civ. No. 05–1–015K).

No. 28822.

Supreme Court of Hawai'i.

April 21, 2009.

As Amended May 22, 2009.

Kenneth R. Kupchak, Robert H. Thomas, Mark M. Murakami, and Christi–Anne H. Kudo Chock (Damon Key Leong Kupchak Hastert), Honolulu, for defendant-appellant, C & J Coupe Family Limited Partnership.

Joseph K. Kamelamela, Michael J. Udovic, Ivan M. Torigoe, and Katherine A. Garson, Deputies Corporation Counsel, County of Hawai‘i, for Plaintiff-Appellee, County of Hawai‘i.

William Meheula and Derek T. Mayeshiro (Winer Meheula & Devens, LLP), Honolulu, for Third–Party Defendant, 1250 Oceanside Partners aka Hokulia.

MOON, C.J., NAKAYAMA, ACOBA, DUFFY, JJ., and Circuit Judge CHAN, assigned by reason of vacancy.

Opinion of the Court by ACOBA, J.

In *County of Hawai'i v. C & J Coupe Family Ltd. Partnership,* 119 Hawai'i 352, 198 P.3d 615 (2008), issued on December 24, 2008, this court held that Defendant–Appellant C & J Coupe Family Limited Partnership (Appellant) "is entitled to seek statutory damages [from Plaintiff–Appellee County of Hawai'i (the County)] pursuant to [Hawai'i Revised Statutes (HRS)] § 101–27 (1993) because it prevailed in [Civil No. 00–1–181K (Condemnation 1)]," [1] and "the property in question was not finally taken in Condemnation 1." *Id.* at 361, 364, 198 P.3d at 624, 627. On January 20, 2009, Appellant filed its Request for Statutory Damages (the Request) and memorandum in support. The County filed its Memorandum in Opposition to Appellant's Request for Statutory Damages on January 30, 2009 (Opposition). Third–Party Defendant–Appellee 1250 Oceanside Partners (Oceanside) joined the County's Opposition and also filed a separate memorandum in opposition to the Request on January 30, 2009. On February 19, 2009, pursuant to this court's February 9, 2009 order, Appellant filed its Responses to Objections re: Request for Statutory Damages (the Response). The County filed a reply to the Response on March 2, 2009 (Reply), in which Oceanside joined on March 2, 2009 (Joinder). On March 5, 2009, Appellant filed an Errata to Responses to Objections re: Request for Statutory Damages (Errata), purportedly to

correct certain errors in the Request and in the Response. For the reasons stated herein, Appellant is awarded $25,676.21 in fees and $1,206.35 in costs.

## I.

### A.

Appellant's Request asked for $45,383.50 in attorneys' fees plus $2,098.07 in general excise tax on those fees, $5,775.59 in costs, and prejudgment interest on those fees and costs in the amount of $1,900.35, all of which it claims to have incurred pursuant to its appeal in Condemnation 1. In addition to those fees and costs, Appellant requests that it recover for the fees and costs incurred in preparing the Request and the court-ordered Response.

### B.

The County does not dispute that Appellant is entitled to recover fees and costs on appeal pursuant to HRS § 101–27. However, the County objects to the total amount of fees and costs requested on the grounds that (1) "attorneys' fees and costs for [the] January 24, 2008 bill should be denied[,]" because they "involved only those services provided prior to the filing of the Notice of Appeal," (2) under *DFS Group L.P. v. Paiea Properties,* 110 Hawai'i 217, 131 P.3d 500 (2006), "costs for computer legal research should be

---

1. HRS § 101–27 provides in its entirety that [w]henever any proceedings instituted under [HRS chapter 101] are abandoned or discontinued before reaching a final judgment, or *if, for any cause, the property concerned is not finally taken for public use, a defendant* who would have been entitled to compensation or damages had the property been finally taken, *shall be entitled, in such proceedings, to recover from the plaintiff all such damage as may have been sustained by the defendant by reason of the bringing of the proceedings and the possession by the plaintiff of the property concerned if the possession has been awarded including the defendant's costs of court, a reasonable amount to cover attorney's fees paid by the defendant in connection therewith, and other reasonable expenses;* and the possession of the property concerned shall be restored to the defendant entitled thereto. Issues of fact arising in connection with any claim for such damage shall be tried by the court without a jury unless a trial by jury is demanded by either party, pur-

suant to the rules of court, within ten days from the date of the entry of an order or judgment allowing the discontinuance of the proceedings, or dismissing the proceedings or denying the right of the plaintiff to take the property concerned for public use. In the event judgment is entered in favor of the defendant and against the plaintiff, any moneys which have been paid, and any additional security which has been furnished, by the plaintiff to the clerk of the court under sections 101–28 and 101–29, shall be applied or enforced toward the satisfaction of the judgment. In the case of the State or a county, if the moneys so paid to the clerk of the court are insufficient, then the balance of such judgment shall be paid from any moneys available or appropriated for the acquisition of the property concerned, or if that is insufficient then the same shall be paid from the general fund of the State or county, as the case may be.
(Emphases added.)

denied[,]" (3) "messenger fees, general excise tax, and interest should be denied," (4) "photocopying costs are excessive," and (5) Appellant should receive "no attorney's fees for unsuccessful claims."

### C.

As noted previously, Oceanside joins in the County's Opposition and Reply and, additionally, seeks to clarify that "HRS § 101–27 only allows a condemnation defendant to 'recover from the *plaintiff* [.]' " (Quoting HRS § 101–27.) (Emphasis supplied by Oceanside.) Because "Oceanside was not the plaintiff in [Condemnation 1] or [in Civ. No. 05–1–015K (Condemnation 2),]" and Appellant's Request was filed "only against the County and not against Oceanside[,]" Oceanside urges that this court "expressly rule that [Appellant] is not entitled to relief under HRS § 101–27 from Oceanside."

### II.

As set forth *supra,* because "the property in question was not finally taken in Condemnation 1," *C & J Coupe,* 119 Hawai'i at 364, 198 P.3d at 627, HRS § 101–27 provides that the defendant, *i.e.,* Appellant, "shall be entitled, in such proceedings, to recover from the plaintiff[, *i.e.,* the County,] all such damage as may have been sustained by the defendant by reason of the bringing of the proceedings . . . including the defendant's costs of court, a reasonable amount to cover attorney's fees paid by the defendant in connection therewith, and other reasonable expenses[.]" Thus, the threshold question for this court to determine is whether "all such damage" under HRS § 101–27 provides adequate authority for Appellant's request for attorneys' fees

and costs *on appeal* and, if so, to what extent.

### A.

Appellant asserts that "[t]he present request is for damages incurred by [Appellant] in the appeal of [Condemnation 1] and *does not include damages incurred by [Appellant] in the trial or remand of [Condemnation 1* [2] *], or in the trial, appeal, or remand of [Condemnation 2].*" (Emphasis added.) Appellant further maintains that "[t]his request is limited to the costs and attorney's fees incurred in the appeal of [Condemnation 1]," and Appellant's attorneys' fees "reflect *only* attorney's fees incurred in the appeal of [Condemnation 1]." (Emphasis added.)

Appellant also indicates that it has made sufficient efforts to specifically identify which fees and costs on appeal were associated with Condemnation 1, as opposed to Condemnation 2. In that regard, Appellant states that "[t]he cost of transcripts in the consolidated trial were [sic] apportioned between [Condemnation 1] and [Condemnation 2]," and that although "[t]he Intermediate Court of Appeals [ (ICA) ] consolidated the separate appeals of [Condemnation 1] and [Condemnation 2,]" "[t]he working attorneys roughly apportioned the time between the two matters and the matters were billed separately." Hence, on the face of the Request, Appellant does not petition for any damages associated with the appeal of Condemnation 2.[3] This court, then, must consider whether HRS § 101–27 provides an appropriate basis for awarding to Appellant fees and costs on appeal associated with Condemnation 1.

### B.

■ By its plain language, HRS § 101–27 appears to provide a sufficient basis for the

---

2. Appellant notes in its Request that it will seek damages incurred in the trial or remand of Condemnation 1 from the Circuit Court of the Third Circuit (the court).

3. Appellant apparently has not requested costs under Hawai'i Rules of Appellate Procedure (HRAP) Rule 39 for the appeal of Condemnation 2. As for attorneys' fees, Appellant has properly recognized that, at least at this point, there is no basis for recovery of fees in Condemnation 2. HRS § 101–27 allows recovery only where the land is "not finally taken." Considering that

Condemnation 2 has been remanded for a determination of whether the land was condemned pursuant to a proper public purpose, it is yet to be determined whether the land in that case will be "finally taken." HRAP Rule 39 only provides for recovery of *costs* on appeal and, therefore, offers no authority in and of itself for the recovery of attorney's fees, although it governs the procedure by which to move for those fees in this court where they can be claimed on a separate basis.

award of damages in the form of costs and attorney's fees sustained as a result of Appellant's appeal of the automatic denial of fees in Condemnation 1.[4] The statutory language "all such damage ... sustained ... by reason of the bringing of the proceedings[,]" on its face would appear to encompass what Appellant seeks herein. Due to the court's failure to timely rule on the issue, Appellant was denied the HRS § 101–27 reimbursements it was owed by the County by virtue of Appellant's success in Condemnation 1, and thereby appealed to this court in order to recover the damages owed. Had the County not brought the unsuccessful proceedings in Condemnation 1, Appellant would never have had cause to move for fees and to subsequently appeal. Therefore, the "damage" sustained by Appellant in seeking the fees and costs owed and in appealing the denial of such fees and costs, was part of the damage resulting from the County having brought the unsuccessful proceedings in Condemnation 1. Consequently, under HRS § 101–27, the County should be held liable for "such damage."[5]

### III.

■ Having determined that HRS § 101–27 provides a proper basis for fees and costs incurred on appeal in Condemnation 1, the next question is whether this court is the appropriate venue in which to request such damages. As Appellant points out, although the authority for the damages requested is HRS § 101–27, HRAP Rule 39 governs the procedure for requesting fees and costs in the appellate courts. Because HRAP Rule 39 requires that "[a] request for fees and costs ... *must be filed with the appellate clerk*," Appellant appears to be correct that "damages incurred by [Appellant] on appeal *may only be awarded by this [c]ourt* pursuant to [HRAP Rule] 39." (Emphases added.)

HRS § 101–27 does not specify where a request for damages under that section should be filed. However, it does provide

that, "*[i]ssues of fact* arising in connection with any claim for such damage *shall be tried by the court* without a jury unless a trial by jury is demanded by either party[.]" (Emphases added.) Despite that language, there is no irreconcilable conflict between the requirement in HRAP Rule 39 that the Request "must be filed with the appellate clerk" and the requirement in HRS § 101–27 that "[i]ssues of fact ... shall be tried by the court." This court has held that where a statute and a rule merely overlap, but do not irreconcilably conflict, effect should be given to both if possible. *See Chock v. Gov't Employees Ins. Co.*, 103 Hawai'i 263, 269, 81 P.3d 1178, 1184 (2003) (although recognizing that "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored[,]" applying the rule that "where the statutes *simply overlap in their application, effect will be given to both if possible,*" and thereby holding that "[t]his court can give effect to both Hawai'i Rules of Civil Procedure Rule 54(d) and HRS § 431:10–242"). Therefore, if HRS § 101–27 and HRAP Rule 39 can be read *in pari materia* without conflict, then this court must give effect to both.

HRS § 101–27 does not include any language dealing expressly with the issue of damages incurred pursuant to an appeal. Because HRS § 101–27 is silent as to which court a request for damages should be directed, the procedure as set forth in HRAP Rule 39 should apply. That rule specifically requires that requests for fees and costs on appeal should be applied for in this court. Moreover, HRS § 101–11 (1993) provides that "[e]xcept as otherwise *expressly provided* in this part, *the procedure shall be the same as in other civil actions.*" (Emphases added.) Therefore, HRS chapter 101 manifests an intent that where that chapter is silent, normal procedures should be followed. An *in pari materia* reading of HRS § 101–27 and HRAP Rule 39 then, dictates that HRAP

---

4. The damage issue was the only issue on appeal to this court that was associated with Condemnation 1. Appellant's other claims, regarding abatement and public purpose, were both associated solely with Condemnation 2.

5. The County has not argued to the contrary, nor is there anything in the legislative history or case law interpreting HRS § 101–27 to indicate that fees and costs should not be recovered for this appeal.

Rule 39 provides the procedure to be followed in this court in applying for fees and costs on appeal, because HRS § 101–27 is silent on that issue. This court under HRAP Rule 39 generally exercises jurisdiction over all requests for fees and costs incurred on certiorari, and HRS § 101–27 does not countenance a departure from that procedure.

Furthermore, the requirement in HRS § 101–27 that "[i]ssues of fact ... shall be tried by the court" with or without a jury based on the demands of the parties, is most logically construed as a reference to the procedure to be followed when a defendant moves for damages in the circuit court, which, according to Appellant, it has every intention of doing with regard to the damages incurred by virtue of the proceedings *in that court*. As for Appellant's request for damages incurred as a result of the appeal, the procedures for requesting attorneys' fees and costs on appeal are outlined in HRAP Rule 39, and are normally followed by this court in civil actions such as the eminent domain proceeding here. Accordingly, HRAP Rule 39 should govern.

### IV.

Having determined that HRS § 101–27 is the appropriate basis for damages and that this court is the appropriate venue in which to request fees and costs incurred on appeal, Appellant's specific requests and the County's objections thereto must be considered *in seriatim*.

### V.

### A.

### 1.

According to Appellant, its $5,775.59 in court costs were incurred as follows:

| NECESSARY EXPENSES | REQUEST |
| --- | --- |
| 1. Copies at $.20 per page | $2,369.00 |
| 2. Courier Services for filing | 24.63 |
| 3. Postage | 80.23 |
| 4. Long Distance | 46.04 |
| 5. Fax | 27.50 |
| 6. Transcripts | 778.83 |
| 7. Color Copies | 18.75 |
| 8. Filing Fees | 245.00 |
| 9. Parking | 10.00 |
| 10. Messenger Fees | 60.00 |
| 11. Legal Research | 2,115.61 |
| TOTAL COSTS | 5,775.59 |

Although Appellant apparently has moved for statutory damages under HRS § 101–27, and not for costs under HRAP Rule 39, it asserts that some of the costs requested are those also set forth in HRAP 39(c), which provides:

(c) *Costs defined. Costs in the appellate courts are defined as:* (1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page; (5) necessary postage, cost of facsimiles, intrastate travel, long distance telephone charges; and (6) *any other costs authorized by statute or rule.*

(Emphases added.) However, Appellant argues that HRS § 101–27 authorizes recovery of costs not ordinarily granted:

Under [HRS § ]101–27, the property owner is "entitled" to be made economically whole and shall recover "*all such damage* as may have been sustained by the defendant by reason of the bringing of the proceedings ... including the defendant's costs of court ... and *other reasonable expenses* ...[,]" [and t]hus, even though under the assumpsit statute, [HRS] § 607–14, this court has noted that legal research expenses are not "taxable costs," legal research expenses incurred and paid by a property owner in a condemnation action in which its property is not taken, [are] ... recover[able] ... as "other reasonable expenses" under [HRS § ]101–27.

(Emphases supplied by Appellant.) (Citation omitted.)

2.

As for attorneys' fees, Appellant claims that "in its successful appeal of [Condemnation 1,]" it incurred $45,383.50 in attorneys' fees, allocated as follows:

| Professional | Time | Rate | Total |
|---|---|---|---|
| Kenneth R. Kupchak | 10.3 | 335-350 | $3,729.54 |
| Robert H. Thomas (RHT) | 66.6 | 300-325 | 21,375.95 |
| Mark M. Murakami (MMM) | 33.8 | 220-230 | 7,594.90 |
| Robert D. Harris | 2.5 | 190 | 475.00 |
| Christi-Anne H. Kudo-Chock (CHKC) | 64.4 | 145-150 | 9,382.61 |
| Cherise Agua-Andrews | 10.7 | 145 | 1,551.50 |
| Eugenie-Mae Kincaid | 9.8 | 130 | 1,274.00 |
| TOTAL | | | 45,383.50 |
| Excise Tax | | | 2,098.07 |
| GRAND TOTAL | | | 47,481.57 |

As to the foregoing fees, Appellant argues that the "lodestar" method, whereby "the [c]ourt determines the number of hours worked and multiplies the hours by a reasonable rate of compensation[,]" is the "presumptively reasonable fee[.]" Appellant asserts that "[t]he rates charged by [Appellant's] counsel are consistent with the prevailing rates in the community for attorneys of like experience." As to the number of hours expended, Appellant claims that "this appeal case presented an issue of first impression with a complex constitutional dimension, and a massive Record on Appeal spanning multiple volumes and nearly a decade of litigation."[6] According to Appellant, as observed before, in order to determine the number of hours spent exclusively on the appeal of Condemnation 1, "[t]he working attorneys roughly apportioned the time between the two matters and the matters were billed separately."

B.

The County does not argue that the hourly rate requested is out of line with "the prevailing market rates in the relevant community[,]" (quoting *Blum v. Stenson*, 465

U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)), or that the number of hours expended on any particular task is unreasonable. Because the rates requested appear to be reasonable, for those invoices that are determined to properly relate to the appeal of Condemnation 1, attorneys' fees must be awarded at the rates claimed by Appellant, and for the number of hours requested. *See Chun v. Bd. of Trustees of Employees' Ret. Sys.*, 106 Hawai'i 416, 423, 106 P.3d 339, 346 (2005) (recognizing that "[t]he value of an attorney's time generally is reflected in his normal billing rate[,]" which should be "applied to the actual hours worked").

VI.

A.

As to its first objection, the County argues that the fees ($11,999.00) and costs ($910.87) from the January 24, 2008 bill should be denied because they are incident to "services provided prior to the filing of the [n]otice of [a]ppeal, which is, prior to February 8, 2008[,]" and "involved the proceedings that was [sic] still before the trial judge." The County specifically identifies five entries from that bill to demonstrate their unrelatedness to matters on appeal:

1. Attorney Kudo–Chock billed 7.5 hours and $1,087.50 in connection with a Motion to Disburse Deposit. *See* entries 12/05/07, 12/07/07, and 12/10/07.

2. Attorney Kupchak billed 1 hour and $335.00 to review the Motion for release of deposit. *See* entry 12/07/07.

3. Attorney Murakami billed 3.9 hours and $858.00 for "develop issues and strategy for applying for funds deposited with court." *See* entry 12/10/07.

In the Response, Appellant answers that "[the] County complains about the inclusion of five entries on the January 2008 invoice denoting work done on a disbursement of deposit funds issue that was not before this [c]ourt" and admits that Appellant "errantly

---

6. This court notes that the "complex constitutional dimension" was actually part of Condemnation 2, for which Appellant does not request, and is not as of yet entitled, to recover fees and costs. However, the County does not argue that

the number of hours spent on any particular task is unreasonable, and, therefore, except where otherwise noted, the claimed number of hours expended is considered reasonable.

included this time and modifies its request to exclude the $2,280.50 (plus tax) invoiced for that work."

However, it appears that the County's specific objection to those entries relating to the disbursement issue was merely exemplary of the fact that *all fees and costs* in the January 2008 bill appear to have been incurred in connection with the circuit court proceedings. For example, many of the entries have to do with "supplemental briefing" regarding the damages issue. To this court's knowledge, that supplemental briefing was directed at the circuit court. Therefore, it appears that none of the entries in the January bill should be included in the award of fees and costs on appeal.

Accordingly, in its Errata Appellant claims that, although the invoice for the January 24, 2008 bill was attached to its Request, "the lodestar was not just a summary of the charges on the invoices, but was based on entries from January [15], 2008 to January 20, 2009." That would mean that *none* of the entries from the January 24, 2008 bill were included in the original lodestar, or the amount of attorneys' fees requested in the original Request. Appellant argues that therefore, it erroneously "withdrew its request for $2,280.50 (plus tax) responding to [the] County's objections about the January 2008 invoice[,]" as "the lodestar in the original request was date-sorted and the offending entries were not included in the lodestar." Consequently, in its Errata, Appellant requests the total amount requested in the original Request, less a few erroneous inclusions it claims to have found through an additional audit.

The lodestar in the original Request was $45,383.50, whereas, based upon the audit, Appellant has revised that amount to $44,696.88 in its Errata. The revised amount appears to include amounts incurred in preparing Appellant's Request for fees and costs (which the Request did not), and to exclude any fees and costs incurred by Appellant prior to January 15, 2008. Therefore, it appears that all entries from the January 24, 2008 bill objected to by the County are properly excluded from the revised lodestar amount set forth in Appellant's Errata.

B.

As to its second point, the County argues that "[n]either [HRAP Rule 39], nor HRS § 101–27 specifically allow[s] for costs associated with legal research searches online[.]" The County points out that "[i]n *Bjornen v. State Farm Fire and Casualty Co.*, 81 Hawai'i 105, 109, 912 P.2d 602, 606 (App.1996), the [ICA] concluded 'that disbursements for computerized legal research such as Westlaw are a component of attorney fees and are not taxable'" because those costs "'are properly reflected as part of the law firm's overhead and, as such, are a factor to be included in the setting of attorneys fees as opposed to ordinary costs.'" (Quoting *id.* at 107, 912 P.2d at 604.) According to the County, this court has also "adopted the position that 'disbursements for computerized legal research ... are a component of attorney fees and are not taxable costs.'" (Quoting *DFS Group*, 110 Hawai'i at 224, 131 P.3d at 507.)

Appellant acknowledges that this court has held that legal research expenses are not recoverable as court costs, as they are more appropriately considered part of the overhead that is already subsumed within an attorney's hourly rate. *See DFS Group*, 110 Hawai'i at 224, 131 P.3d at 507 (agreeing with the ICA's ruling and thereby "conclud[ing] that the computer-assisted research charges in the present case are not recoverable as separately billed attorneys' fees"). Appellant maintains, however, that it is "entitled to recover those [legal research] expenses as 'other reasonable expenses' under [HRS § ]101–27[,]" because "the property owner is 'entitled' to be made economically whole."

Appellant's rationale disregards this court's and the ICA's reasoning for not allowing computer-assisted research charges, such as by Westlaw and by Lexis, to be taxed to losing parties as costs. This court in *DFS Group* agreed with the ICA that legal research costs are already "subsumed within an attorney's fee and therefore such costs may not be awarded in addition to attorneys' fees." *Id.* at 223, 131 P.3d at 506. Appellant argues to the contrary that HRS § 101–27

"establishes an 'actual causation' standard for measuring damages—meaning that if a property owner actually incurs damages 'by reason of the bringing of the [condemnation] proceedings,'" then that damage should be recoverable.

Because "[Appellant] is separately obligated to pay for computer-assisted legal research accomplished by counsel related to the appeal of Condemnation 1[,]" Appellant maintains it should recover its actual costs in order "to be restored to the position it would have been in had [the] County not instituted [Condemnation 1]." However, under this court's rationale in *DFS Group*, if Appellant collects an appropriate attorney's fee pursuant to HRS § 101–27, it will have already been "made . . . whole" for its research costs, and any additional taxation of those costs to the County would provide Appellant with a windfall. Thus, departure from the rule established in *DFS Group* is not warranted, and any separate recovery for legal research costs as "other *reasonable* costs" under HRS § 101–27 is denied.

### C.

The County's third objection is that Appellant's argument that messenger fees, excise tax, and interest should be included as costs is without support.

### 1.

■ First, as to messenger fees, the County maintains that "[a]bsent extraordinary circumstances, the cost of 'messenger fees for the routine task of delivering a party's documents to court is categorically outside the concept of costs[,]'" (quoting *Hawai'i Ventures, LLC v. Otaka, Inc.*, 116 Hawai'i 465, 479, 173 P.3d 1122, 1136 (2007)), and because "[Appellant] has failed to establish any extraordinary circumstances in using a messenger, this [c]ourt should deny [Appellant's] request for messenger fees." In *Hawaii Ventures*, this court agreed with a previous opinion of the ICA that "the function of delivering documents, as a general proposition, [is] akin to the other tasks performed by support staff[,]" and, therefore, "except in the rare circumstance where the need in a particular case is extraordinary in its volume

or nature, the cost of this function . . . is treated as overhead." *Id.* at 480, 173 P.3d at 1137 (quoting *Kikuchi v. Brown*, 110 Hawai'i 204, 213, 130 P.3d 1069, 1078 (App.2006)).

Appellant has not made any claim that the messenger services necessary in this case were for some reason extraordinary. Instead, Appellant makes the same argument regarding messenger fees as it does in support of legal research costs, that "Appellant is entitled to all damages actually expended, and [the] County does not dispute that the fees were actually incurred." However, this court has come to the same conclusion regarding messenger fees as it has with regard to legal research costs—that they are properly seen as a part of a firm's overhead and, therefore, should be reflected in attorneys' fees.

It follows that this court has already determined that a reasonable hourly rate for attorneys in the community is inclusive of overhead costs such as research and messenger fees, and Appellant does not argue that HRS § 101–27 damages are not subject to a reasonableness requirement. *See* HRS § 101–27 (allowing recovery for "a *reasonable* amount to cover attorney's fees paid by the defendant in connection therewith, and other *reasonable* expenses" (emphases added)). Therefore, Appellant's request for taxation of messenger fees to the County is denied.

### 2.

■ Second, although the County argues that Appellant lacks authority for its request to include excise tax in the assessment of fees, it is common practice in this jurisdiction to include an excise tax in the amount of the fee award. *See, e.g., DFS Group*, 110 Hawai'i at 223, 131 P.3d at 506 ("Accordingly, applying a rate of $215/hour to a sum of 105 hours, we conclude that DFS has shown that it has incurred $22,575.00 in reasonable and necessary attorneys' fees, *and $940.70 in taxes* [and w]e therefore award DFS $23,515.70 in attorneys' fees." (Emphasis added.)); *Blair v. Ing*, 96 Hawai'i 327, 336, 31 P.3d 184, 193 (2001) ("Thayer is awarded $21,370.00 for attorneys' fees, *$898.82 for general excise tax*, and $740.01 for costs, for

a total of $23,008.83, as against Plaintiffs." (Emphasis added.)); *Chun v. Bd. of Trustees of Employees' Ret. Sys.*, 92 Hawai'i 432, 448, 992 P.2d 127, 143 (2000) (vacating award of attorney's fees because court should have considered both the percentage and lodestar methods, but without comment on the court's award of an excise tax). The County cites no authority to the contrary and does not offer any rationale as to why the excise tax should not be granted. Therefore, to the extent Appellant is awarded attorneys' fees, inclusion of the accompanying excise tax is allowed as part of that award.[7]

## 3.

■ Third, as to pre-judgment interest, the County argues that "HRS § 101–27 does not specifically allow prejudgment interest." Appellant asserts that it is entitled to interest from the date of each invoice for attorneys' fees and costs "[a]s a form of damage, pursuant to [HRS § 101–27]." Appellant further urges that "[t]he purpose of a damage award is to put a party in the position they would have been in had not harm occurred" and that "[Appellant] suffered 'damage . . . by reason of' the appeal of the denial of damages in Condemnation 1 each time it had to pay its lawyers." According to Appellant, "[i]nterest from the date of harm is an element of damage and this [c]ourt is authorized to award prejudgment interest in all civil actions" under HRS § 636–16.[8] Appellant argues that it must only show that "there was a delay, for whatever reason, between the date of injury and the date of payment[,]" (citing *Tri–S Corp. v. W. World Ins. Co.*, 110 Hawai'i 473, 498, 135 P.3d 82, 107 (2006)), and therefore, it should receive "interest at the rate of 10% from the date of each invoice[.]"

The County counters that "[b]oth HRS § 636–16 and the ruling in the *Tri–S Corp.* case are inapplicable in this instant condemnation case" because "HRS § 636–16 allows prejudgment interest in civil cases 'provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.'" Therefore, the County asserts that, because "[t]his present condemnation case could not reasonably be considered a tort or contract case[,] . . . prejudgment interest cannot be based on HRS § 636–16."

■ Pre-judgment interest may be awarded under HRS § 636–16 in the court's discretion "when the issuance of judgment is *greatly delayed* for any reason." *Tri–S Corp.*, 110 Hawai'i at 498, 135 P.3d at 107 (emphasis added). Because HRS § 636–16 allows specifically for the "awarding [of] interest *in civil cases*" (emphasis added), the County's argument that it should be limited to those arising from tort or contract is belied by the plain language of the statute. *See Metcalf v. Voluntary Employees' Ben. Ass'n of Hawaii*, 99 Hawai'i 53, 61, 52 P.3d 823, 831 (2002) (stating that, "[u]nder HRS § 636–16, courts *in all civil cases* have the discretion to award

---

7. HRS § 237–13(6)(A) (Supp. 2008) provides in relevant part as follows with regard to excise tax:

> There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:
>
> . . . .
>
> (6) Tax on service business.
>
> (A) Upon every person engaging or continuing within the State in any service business or calling including professional services not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to four per cent of the gross income of the business[.]

According to Department of Taxation Announcement 2006–15, as of January 1, 2007, the general excise tax in the City and County of Honolulu is 4.5%, which includes a .5% County surcharge. Appellant seems to have used a different rate in calculating the amount of general excise tax. Because 4.5 percent is the amount designated by the Department of Taxation, that amount will be applied.

8. HRS § 636–16 (1993) provides that

> [i]n awarding interest [on a judgment] in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

pre-judgment interest" and because the instant case "was a civil case, nothing in the statute prohibits awarding pre-judgment interest" (emphasis added)). This court has recognized that "[t]he purpose of [HRS § 636-16] is to allow the court to designate the commencement date in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." *Tri-S Corp.*, 110 Hawai'i at 498, 135 P.3d at 107 (internal quotation marks and citation omitted). Appellant has not asserted that there has been any lengthy delay in the issuance of the judgment of attorneys' fees or costs in this appeal. Therefore, Appellant's request for prejudgment interest is denied.

### D.

■ The County's fourth objection is that Appellant's requests for "photocopying costs in the total amount of $2,369.00" at 20 cents per page "are excessive" and "seemingly out of line for this appeal." The County notes that "[HRAP Rule 39(c)(4) ] allows recovery for 'the cost of printing or otherwise producing necessary copies of briefs and appendices,'" and that "[i]t is doubtful that the 11,845 pages or 6,802 pages [claimed by Appellant] would be the cost of printing the necessary copies of briefs and appendices." Therefore, the County argues that, "[b]ecause [Appellant] has failed to establish the reasonableness of the appropriate taxable costs for photocopying costs, [Appellant's] request for such costs should be denied."

Appellant maintains in response that it should be reimbursed for copying costs in order to "make [Appellant] whole." Appellant asserts that " 'a lot of sheets of paper' alone is not a responsive objection to copying expenses, especially when considering the consolidated multivolume record in the two appeals, which covered nearly a decade of litigation in two circuit court cases with multiple parties" and that "[t]he rule in [HRAP Rule] 39 limiting a request for costs to copies of briefs and appendices is not applicable to requests for damages under [HRS § ]101–27, since the successful landowner *is entitled to all copying costs actually incurred*[.]" (Emphasis added.)

Appellant's argument again fails to acknowledge that despite what "actual" costs Appellant may have incurred, recovery of damages under HRS § 101-27 is subject to a reasonableness requirement. The phrase regarding fees and costs in HRS § 101-27 states that the award shall include "the defendant's costs of court, a reasonable amount to cover attorney's fees paid by the defendant in connection therewith, *and other reasonable expenses*[.]" (Emphasis added.) That portion of the statute is essentially a list of items that are to be included in the damage award. Thus, the phrase "and *other* reasonable expenses," (emphasis added), assumes that the previous items listed are also types of reasonable expenses. Appellant's argument that it must be granted all costs "actually incurred," regardless of reasonableness, renders the term "other" superfluous. *See Carlisle v. One (1) Boat*, 119 Hawai'i 245, 255, 195 P.3d 1177, 1187 (2008) (stating that "[i]t is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that *no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute*" (emphasis added)). Hence, under the plain language of the statute, costs, attorney's fees, and other expenses are all subject to a reasonableness requirement.[9]

The County's argument that "11,845 pages ... is a lot of sheets of paper" is essentially an argument that the volume seems *unreasonable*. While Appellant's argument that the record in this case was voluminous is well taken, this court is aware that the record was

---

9. Furthermore, although Appellant had termed its photocopying expenses as "costs," to say that $2,369.00 in photocopying costs qualify as "costs of court" under HRS § 101–27 is not persuasive. HRAP Rule 39 is entitled "civil costs" and refers to "costs," not "costs of court." A review of the statutory materials using the term "costs of court" reveals that that term is typically limited to costs actually paid to the court, and therefore, Appellant's photocopying costs are more properly considered "other reasonable expenses," leaving no doubt that those costs are subject to a reasonableness requirement.

available in electronic format. Although the County's objection to the copying costs is vague, in response to that argument, Appellant did not identify which costs were associated solely with "producing necessary copies of briefs and appendices," nor did it make any argument as to why any additional photocopying costs requested are reasonable. Considering the foregoing circumstances, Appellant's photocopying costs are denied.[10]

### E.

Finally, the County objects to Appellant's recovery of any attorneys' fees for "unsuccessful claims." The County asserts that under *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 445, 32 P.3d 52, 89 (2001), "time spent on unsuccessful claims unrelated to [Appellant's] successful claims could not be part of any award of 'reasonable attorney's fees under Hawai'i fee-shifting statutes.'" Accordingly, the court must "consider whether [Appellant's] successful and unsuccessful claims 'involved a common core of facts or were based on related legal theories[.]'" (Quoting *id.*) (Other citation omitted.)

Applying those legal theories, the County argues that although Appellant "prevailed on two out of the three" points it raised on appeal, "the abatement point that [Appellant] did not prevail on was a point that [it] discussed extensively in its briefs" and is "totally unrelated and do[es] not involve the same common core of facts or legal theories to the HRS § 101–27 statutory damages issue or the pretext public purpose issue." Therefore, the County argues that, "all of the attorneys' fees expended on the abatement issue should be excluded [and] those billings that are not clear enough to identify what issue they relate to should be excluded because [Appellant] has the burden of proving any entitlement to reimbursement for attorneys' fees and costs."

To the contrary, Appellant maintains that "[its] request *only* seeks damages for the appeal of Condemnation 1." (Emphasis added.) The appeal in Condemnation 1 related only to damages, an issue upon which the County concedes that Appellant was successful on appeal. Appellant thereby maintains that "[t]he fees to litigate the second and third points of appeal (*abatement* and pretext) were invoiced separately, and were *not included in the present Request.*" (Emphases added.) Thus, according to Appellant, the County's objection on this point is misplaced, inasmuch as Appellant has only requested fees as to *one* of the issues on appeal, the issue of damages, a point on which it is undisputed that Appellant was successful.

However, the County argues in its Reply that in fact, "upon review of all of the invoices, [Appellant] has sought attorneys' fees for matters not related to the appeal of Condemnation 1." Specifically, the County objects to the following:

| BILL DATE | Date of Service | Attorney | Description | Hours | Reason to Exclude |
|---|---|---|---|---|---|
| February 20, 2008 | 1/14/08 | MMM | Review of Ninth Circuit case | .80 | Matsuda v. Honolulu had no relevance on issue of damages |
| | 1/14/08 | RHT | Review Matsuda case | .60 | |
| June 25, 2008 | 5/23/08 | RHT | Review Matsuda cert petition and opposition | .30 | Matsuda v. Honolulu and abatement have no relevance on issue of damages |
| | 5/26/08 | CHKC | Review County's brief; research on abatement | 3.00 | |
| July 23, 2008 | 6/17/08 | RHT | County's Application to Transfer case to Hawai'i Supreme Court | .10 | Case transferred, County prevailed on its Application to Transfer case |
| | 6/234/08 [sic] | RHT | Memo in Opposition to Transfer | .80 | |

10. Therefore, this court has left undecided the question of whether photocopying costs in addition to those allowed under HRAP Rule 39 might be allowed under HRS § 101–27 either as costs or "other reasonable expenses" in a case where the movant showed that those expenses were reasonable.

| | | | | | |
|---|---|---|---|---|---|
| October 21, 2008 | 9/3/08 | MMM | Develop and Strengthen Arguments re consolidation and damages | .20 | Consolidation is not a damage issue |
| | 9/30/08 | MMM | Abatement Issues | .70 | County prevailed on Abatement Issue |
| | | RHT | Research for Abatement | 1.00 | |
| November 14, 2008 | 10/1/08 | MMM | Research and Review of Record of Appeal regarding Abatement | .40 | County prevailed on Abatement Issue |

Additionally, the County claims that "[i]n billings dated May 22, June 25, July 23, August 21, and October 21, a substantial amount of time was spent in supplementing the Record on Appeal, and there is no clear indication that that time was solely spent for the damages issue[; a]nd in billings dated October 21 and November 14, 2008, a substantial amount of time by two attorneys was recorded for the preparation and presentation of oral argument without identifying the specific amount of time spent for the damage issue." Therefore, the County argues that the "billings that is [sic] not clear enough to identify what issue they relate to should be excluded because [Appellant] has the burden of proving any entitlement to reimbursement for attorneys' fees and costs."

Appellant maintains in its Errata that its audit "identified entries that require correction in the original request" and that the "new lodestar, as supported by the attached spreadsheet (built off the earlier submitted invoices), is as follows":

| Professional | Time | Rate | Total |
|---|---|---|---|
| Kenneth R. Kupchak | 10.4 | 335-350 | 3,764.54 |
| Robert H. Thomas | 70.1 | 300-325 | 22,518.58 |
| Mark M. Murakami | 35.1 | 220-230 | 7,913.09 |
| Robert D. Harris | 2.5 | 190 | 475.00 |
| Christi-Anne H. Kudo-Chock | 49.1 | 145-150 | 7,239.17 |
| Cherise Agua-Andrews | 10.7 | 145 | 1,551.50 |
| Eugenie-Mae Kincaid | 11.0 | 130 | 1,235.00 |
| Total | 188.9 | | 44,696.88 |

As to the County's specific objections, Appellant claims that

> [the] County objected to entries on 1/14/08 for MMM and RHT. As noted above, [Appellant's] lodestar did *not* include time before 1/15/08. Therefore, this time was *not* sought in the original Request.

> The 5/23/08 and 5/26/08 entries are hereby withdrawn from [Appellant's] Request and the damages sought are reduced appropriately in the above lodestar.

> The 6/17/08 and 6/234[sic]/08 entries are appropriate as they were incurred in the course of the Condemnation 1 appeal.

> The 9/3/08, 9/30/08 and 10/01/08 entries are hereby withdrawn from [Appellant's] Request and the damages sought are reduced in the above lodestar.

■ As discussed *supra*, Appellant appears to have excluded all fees and costs incurred prior to January 15, and, therefore, the contested 1/14/08 entry has been excluded. Additionally, the 5/23/08, 5/26/08, 9/3/08, 9/30/08 and 10/01/08 entries have been excluded from the final revised lodestar amount, as Appellant concedes that those entries were erroneously included in the original amount. Furthermore, Appellant protests that the contested 6/17/08 and 6/23/08 entries, regarding the County's motion to transfer, "were incurred in the course of the Condemnation 1 appeal." Although the County prevailed on that motion, it appears that Appellant has properly included attorney's fees incurred in defending the motion to transfer in its Request, inasmuch as such fees are encompassed under HRS § 101–27 as part of "all such damage as may have been sustained by the defendant by reason of the bringing of the proceedings" in Condemnation 1. Therefore, those entries will be included in the fee award.

■ As to the County's objections to entries attributed to supplementing the Record on Appeal and preparing for oral argument, Appellant does not address those objections or provide this court any guidance as to whether the time claimed for those entries actually applies only to Condemnation 1, or also to Condemnation 2. Upon reviewing Appellant's revised entries as set forth in its Errata, following the internal audit, it appears that 18.9 hours of attorney time were devoted to supplementing the Record on Appeal, and 30.6 hours were spent preparing for and attending oral argument in this court.

Although Appellant has claimed that it is only including in the lodestar time spent on the damages issue, it has conceded to have erroneously included other items unrelated to Condemnation 1. Therefore, because Appellant has failed to argue that the specific entries regarding supplementing the Record on Appeal and those regarding oral argument are related in their entirety to Condemnation 1, the amounts claimed for those entries are excluded from the lodestar amount.

## VII.

Additionally, Appellant, in its Response, requests "the damages it incurred in filing [or preparing] the Request and this Response" as follows:

| Professional | Time | Rate | Total |
|---|---|---|---|
| Kenneth R. Kupchak | 6.6 | 350 | 2,310.00 |
| Robert H. Thomas | 13.4 | 325 | 4,355.00 |
| Mark M. Murakami | 24.1 | 230 | 5,543.00 |
| Matthew T. Evans | 1.2 | 150 | 180.00 |
| TOTAL | | | 12,388.00 |
| Excise Tax | | | 515.34 |
| GRAND TOTAL | | | 12,903.34 |

| NECESSARY EXPENSES | REQUEST |
|---|---|
| 1. Copies at $.20 per page | 159.40 |
| 2. Postage | 9.90 |
| 3. Long Distance | 7.96 |
| 4. Fax | 2.00 |
| 5. Messenger Fees | 6.00 |
| TOTAL COSTS | 185.26 |

■ The amount of total fees requested has been amended in the Errata, as Appellant realized that it had already included the time spent preparing the Request in its original lodestar amount, and thereby had double-counted that time by requesting it again in the subsequent Response. The revised amount, as set forth in Appellant's Errata, apparently is limited to time expended in preparing Appellant's Response as follows:

| Professional | Time | Rate | Total |
|---|---|---|---|
| Kenneth R. Kupchak | 4.0 | 350 | 1,500.00 |
| Robert H. Thomas | 5.9 | 325 | 1,917.50 |
| Mark M. Murakami | 10.0 | 230 | 2,300.00 |
| Matthew T. Evans | 3.5 | 150 | 525.00 |
| TOTAL | | | 6,242.00 |

In response to Appellant's request for such fees and costs, the County urges that the "additional request for attorneys' fees and costs should be denied." As the County correctly points out, HRAP Rule 39(d)(1) requires that "[a] party who desires an award of attorney's fees and costs shall request them by submitting an itemized and verified bill of fees and costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts." According to the County, it "did not receive any itemized and verified bill of fees and costs for [Appellant's] request for attorneys' fees and costs for filing its [Request and] Responses" and "[w]ithout the itemized and verified bill of fees and costs, the County is unable to reasonably provide objections to [Appellant's] additional requests for [s]tatutory [d]amages."

Although it appears that the fees and costs incurred in filing the Request and the subsequent Response had not been invoiced at the time the Response was filed, Appellant has included an itemized bill, at least for attorneys' fees, in its Errata. Exhibit B to the Errata appears to include time spent on the Request, whereas, Exhibit C includes the time expended on the court-ordered Response. However, Appellant did not expressly request attorneys' fees for preparing the Request in its original Request, nor did it provide supporting documentation for those fees. Moreover, upon filing its court-ordered Response and requesting fees for preparing that Response, Appellant again did not provide any supporting documentation as required by HRAP Rule 39(d)(1). Although Appellant has now filed the requisite itemized account of attorneys' fees in its Errata, Appellant does not provide this court with any rationale as to why it should be permitted to essentially raise new substantive arguments for the first time in an Errata. *See Taomae v. Lingle,* 110 Hawai'i 327, 333, 132 P.3d 1238, 1244 (2006) ("Plaintiffs' arguments that attorneys' fees should be awarded pursuant to (1) HRS § 602–5(7), (2) this court's inherent equitable powers, and (3) the private attorney general doctrine, were raised for the first time in their reply memorandum[, and, a]ccordingly, we deny the request for fees on such grounds."). Furthermore, waiting until the Errata to provide the appropriate support leaves the County without

an opportunity to make specific objections to those items. Therefore, Appellant's request for attorneys' fees for preparation of the Request and the subsequent Response is denied. Additionally, Appellant has not provided an itemized and verified bill for the $185.26 in costs expended in preparing the Request and the Response, and, therefore, Appellant is denied recovery for the costs it incurred in preparing the Request and the Response.

## VIII.

Finally, Oceanside advances a meritorious argument that, because "Oceanside was not the plaintiff in [Condemnation 1,]" it should not be held liable for damages under HRS § 101–27. Appellant has not moved to recover damages against Oceanside, and it does not appear that Oceanside, as a third-party defendant, can be held liable for damages under HRS § 101–27, as it did not institute the condemnation proceedings. Hence, damages are recoverable only against the County and not against Oceanside.

## IX.

In accordance with the foregoing, Appellant is entitled to recover the amount requested in its corrected lodestar, less (1) the amounts claimed in the 6/17/08 and 6/23/08 entries regarding the County's Application to Transfer, (2) the amount requested for those entries related to (a) supplementing the Record on Appeal, and (b) preparing for and attending oral argument in this court, and (3) the amount of pre-judgment interest on those fees. Further, Appellant is awarded the amount of costs requested less (1) costs associated with legal research; (2) messenger/courier fees; and (3) one-half of the claimed photocopying costs. As to the fees and costs claimed for preparing the Request for fees and costs and the subsequent Response, those fees and costs are denied.

Therefore, as to fees, Appellant is entitled to recover $25,370.55 as follows:

| | NATURE OF REQUEST | REQUEST | AWARD | NOTES |
|---|---|---|---|---|
| 1. | Attorneys' fees for appeal of Condemnation 1 [11] | 36,498.38 | 24,570.54 | Amount requested less $12,220.06 [12] |
| 2. | Attorneys' fees for preparing Request for fees and costs | 8,198.50 | 0 | |
| 3. | Excise tax on attorneys' fees for Condemnation 1 and Request | 2,054.97 | 1,105.67 | At a rate of 4.5% |
| 4. | Attorneys' fees for Response | 6,424.50 | 0 | |
| 5. | Excise tax on attorneys' fees for Response | 259.69 | 0 | |
| 6. | Pre-judgment interest | 2,109.41 | 0 | |
| | TOTAL FEES | 55,363.45 | 25,676.21 | |

As to costs, Appellant is entitled to recover $1,206.35 as follows:

| | EXPENSES | REQUEST | AWARD |
|---|---|---|---|
| | NECESSARY | | |
| 1. | Copies at $.20 per page | 2,369.00 | 0 |
| 2. | Courier Services for filing | 24.63 | 0 |

11. This amount was calculated by subtracting from the total amount requested, the amounts for those entries that appeared to relate to the preparation of the Request, which amounted to $8,198.50, and are analyzed separately.

12. The following items were excluded because, as explained *supra*, it was not clear that they were related in their entirety to Appellant's successful appeal of Condemnation 1: 05/23/08 405.00, 05/28/08 225.00, 06/02/08 225.00, 06/02/08 195.00, 06/05/08 234.00, 06/06/08 150.00, 06/09/08 180.00, 06/24/08 330.00, 06/25/08 30.00, 07/09/08 30.00, 08/26/08 65.00, 08/27/08 97.50, 09/05/08 408.28, 09/10/08 13.61, 09/17/08 408.28, 09/22/08 206.41, 09/24/08 147.43, 09/29/08 459.09, 09/29/08 589.74, 10/03/08 115.00, 10/06/08 585.00, 10/07/08 422.50, 10/07/08 75.00, 10/08/08 357.50, 10/09/08 682.50, 10/10/08 1,007.50, 10/13/08 69.00, 10/13/08 780.00, 10/14/08 483.00, 10/14/08 715.00, 10/15/08 150.00, 10/15/08 975.00, 10/16/08 299.00, 10/16/08 812.50.

| | | | |
|---|---|---|---|
| 3. | Postage [13] | 80.23 | 80.23 |
| 4. | Long Distance | 46.04 | 46.04 |
| 5. | Fax | 27.50 | 27.50 |
| 6. | Transcripts | 778.83 | 778.83 |
| 7. | Color Copies | 18.75 | 18.75 |
| 8. | Filing Fees | 245.00 | 245.00 |
| 9. | Parking | 10.00 | 10.00 |
| 10. | Messenger Fees | 60.00 | 0 |
| 11. | Legal Research | 2,115.61 | 0 |
| | TOTAl COSTS | 5,775.59 | 1,206.35 |

## X.

For the foregoing reasons, Appellant is awarded $25,676.21 in attorneys' fees and $1,206.35 in costs from the County.

13. The County did not object to the costs requested for postage, long distance, fax, transcripts, color copies, filing fees, or parking. Therefore, those costs are granted as part of a reasonable award under HRS § 101–27. *See Blair*, 96 Hawai'i at 335, 31 P.3d at 192 ("In the absence of opposition, we presume that the remaining costs were reasonable." (Discussing costs under HRS § 607–9 and HRAP Rule 39(c) (2000).)); *Wong v. Takeuchi*, 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998) ("Unless there is a specific objection to an expense item, the court ordinarily should approve the item." (Discussing costs under HRS § 607–9).).